**L. D. REEDER CONTRACTORS OF ARIZONA, an Arizona corporation, Appellant,**

v.

**HIGGINS INDUSTRIES, INC., a Louisiana corporation, Appellee.**

No. 15870.

United States Court of Appeals Ninth Circuit.

March 10, 1959.

er Contractors against Higgins Industries, Inc., the manufacturer, and McCauley Lumber and Flooring Co., the wholesaler, seeking recovery of damages for an alleged breach of contract, breach of warranty, and for misrepresentation, in furnishing certain wooden flooring blocks. 28 U.S.C. § 1332. The appeal is from a judgment of the District Court for the Southern District of California, Central Division, dismissing the action as to Higgins Industries.

The appellant (hereinafter referred to as Reeder) is an Arizona corporation. The appellee-defendant is a Louisiana corporation (hereinafter referred to as Higgins). The other defendant below, McCauley Lumber and Flooring Co. (hereinafter referred to as McCauley) —not a party to this appeal—is a California corporation. The amount in controversy, exclusive of interest and costs, exceeds $3,000, the jurisdictional limit at the time this suit was filed.

Appellee Higgins filed a motion to dismiss and to quash service, which was granted below, upon the ground that Higgins was not doing business in California.[1] Appellant having filed a timely appeal, this Court has jurisdiction. 28 U.S.C. § 1291.

Because the determination of whether a court has jurisdiction over a party turns primarily on the facts, we only generally outline the facts leading up to the alleged cause of action at this point, leaving the details to our discussion which follows.

It appears from the record before us that appellant Reeder was awarded a subcontract to do the flooring on a housing development to be built in Phoenix, Arizona. The complaint alleges, and it is not denied by any of the affidavits

Wiseman & Elmore, Andrew J. Weisz, Los Angeles, Cal., for appellant.

James A. Williams, Los Angeles, Cal., Richard B. Montgomery, New Orleans, La., for appellee.

Before FEE, CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

This is an action based on diversity of citizenship, filed by appellant L. D. Reed-

1. Although there are no specific references to the fact in the briefs, it appears from the record (and affidavits therein) that appellee Higgins was purportedly served by service on Robert V. Henry, president of co-defendant McCauley Lumber and Flooring Co., Inc., on the theory that he was an agent of Higgins within the state of California. Higgins spe-cifically denies, by several affidavits, that Henry is or ever was its agent for purposes of service of process, or for any other purpose whatsoever. Affidavits of McCauley, through its officers, including Henry, indicate only that it "has acted as distributor and representative of Higgins."

filed in support of the motion to dismiss, that Higgins contracted (presumably in Arizona) and induced the owner and architect of the development to specify that Higgins oak flooring blocks be used in constructing the project. (Rental Development Corporation of America was the builder; Rubenstein Construction Company was the general contractor. Both were Arizona corporations.) Defendant McCauley, having learned of the specification, contacted Reeder sometime prior to November 2, 1954, and offered to sell to Reeder the necessary 150,000 square feet of Higgins flooring block. On or about November 2, 1954, Reeder and McCauley entered into a contract whereby Reeder bought the requisite flooring block. Apparently, McCauley sought and obtained from Higgins a quotation for this job before entering into the contract.

It further appears from the record that McCauley, knowing that Higgins had entered into exclusive sales agreements with three other distributors in the Los Angeles area which prevented it from shipping its goods into Southern California on McCauley orders, placed the order with Higgins for the flooring blocks to be shipped to Reeder at Phoenix, Arizona. The McCauley order was accepted at Higgins' offices in Louisiana.

After execution of the contract, in January or February of 1955, Crozat, sales manager for appellee Higgins, called on appellant in its Los Angeles offices to determine the reason for Reeder's failure to request shipment. Crozat stated that the delay was inconveniencing his company and that it was considering cancelling the order unless shipment was requested. Bell, sales and production manager of Reeder, explained to Crozat that there was some delay at the job site in Arizona, but agreed to accept shipment of another carload of the flooring at that time, in order to avoid having the order cancelled.

Ultimately some 70,000 square feet of the flooring block was delivered, in accordance with the instructions in the McCauley order, to the job site in Phoenix, Arizona. The appellant, however, alleges that a substantial portion of the block was defective and generally not up to the samples shown it. Because of this, the appellant alleges various losses due to additional installation costs, replacement costs, etc., which total $182,402.00 in general and special damages.

Based on these facts, and those detailed below, the court dismissed the action as to Higgins on the ground that Higgins was not doing business in California and, therefore, could not be sued there. Appellant, taking exception to this determination, makes two specifications of error. First, that the court below erred in holding that appellee was not doing business in California; and second, that the court erred in holding that appellee was not amenable to service of process issued by a court sitting in California.

### I—The Law as to Doing Business

■ "Jurisdiction" in law is not a simple matter. To obtain a valid judgment, the party seeking it must (a) proceed in a competent court; (b) give his opponent reasonable notice of the litigation and grant him a reasonable opportunity to be heard;[1a] and (c) establish "judicial jurisdiction" over the defendant involved.

■ Obviously, a lack of competence of the court to hear the matter will prevent the entry of a valid judgment. In statutory courts, of which the federal court is one, compliance with the statutory jurisdictional requirements, such as diversity and amount in controversy, must be alleged and proved. McNutt v. General Motors Acceptance Corp., 1936, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135; Chicago, Burlington & Quincy R. Co. v. Willard, 1911, 220 U.S. 413, 419–421, 31 S.Ct. 460, 55 L.Ed. 521.

■ A judgment will be invalid for lack of due process if no reasonable notice or no reasonable opportunity to pre-

1a. Restatement Conflict of Laws Second § 75 (Tentative Draft No. 3, 1956).

sent a defense is given. Mullane v. Central Hanover Bank & Trust Co., 1950, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865; McDonald v. Mabee, 1917, 243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608.

■ But more than this is needed, and it has been described as "judicial jurisdiction." The Restatement [2] says that judicial jurisdiction exists whenever a state has sufficient contact with a person to make the exercise of jurisdiction reasonable, i. e., to make it consistent with the requirements of due process for the state to try in its courts a particular case relating to that person. This definition has met the approval of recent writers on the subject, particularly those who had a hand in drafting the definition.[3]

■ Judicial jurisdiction over nonresidents is one of the shifting areas existing in the conflict of laws. Every law

student has studied the landmark case of Pennoyer v. Neff, 1878, 95 U.S. 714, 24 L.Ed. 565, and its rule that a state has judicial jurisdiction over persons within, or domiciled within, its borders.[4] But as has been so aptly stated recently, a state also has jurisdiction over and beyond persons within its borders.[5]

The legal boundaries established by Pennoyer v. Neff, in 1878, have been greatly expanded by more recent decisions of the Supreme Court.

■ A case described as "undoubtedly the most important case in the field of judicial jurisdiction" [6] is International Shoe Co. v. State of Washington.[7] That case involved an attempt by that state to enforce an assessment of contributions to its state unemployment fund. There, some thirteen salesmen of a Delaware corporation traveled within the State of Washington. They had authority only to

2. Restatement Conflict of Laws Second § 74 (Tentative Draft No. 3, 1956).

3. Reese, Judicial Jurisdiction over Non-Residents; The Impact of McGee v. International Life Insurance Company, 13 Record of N.Y.C.B.A. 139. Professor Reese is a Columbia Law School Faculty member, and is the reporter for the Restatement of Conflict of Laws Second. And see, Note, Jurisdiction Over Nonresident Corporations Based on a Single Act: A New Sole For International Shoe, 47 Georgetown L.J. 342, 345 (1958). Cf. also, Symposium, Jurisdiction: Current Problems and Legislative Trends, 44 Iowa L.Rev. 247 et seq. (1959). Especially see, therein, Note, Recent Interpretations of "Doing Business" Statutes, id. at 345, 356–58.

4. "[E]very State possesses exclusive jurisdiction and sovereignty over persons and property within its territory." 95 U.S. at page 722.

5. "It has jurisdiction over its domiciliaries, wherever they may be, and to a somewhat lesser extent it has jurisdiction over its absent nationals or citizens. Consent is, of course, a good basis of jurisdiction, and so too is an appearance for the purpose of taking some part in a judicial proceeding. More recently, it has become clear that a state has judicial jurisdiction over persons and corporations that do business within its territory, at least with respect to causes of action arising out of this business. And

it is also true that to some extent the doing of an act, or the ownership of property, in a state gives that state judicial jurisdiction over the actor or owner. Thus, a state can entertain suit in its courts against one who causes injury while operating an automobile on its highways. All states of this country now have non-resident motorist statutes of this sort. In recent years, the states have sought to assert jurisdiction over non-residents who do a variety of other acts within their territory. In fact, the doing of an act is without question that basis of jurisdiction which is currently in the most rapid process of expansion. Its outermost limits are not yet clearly defined, and, in the absence of relevant judicial authority, reasonableness continues to provide the only criterion by which it can be determined whether a given act affords the state judicial jurisdiction in the particular case. This, in short, is an area where there is yet much uncertainty, which ultimately can be removed only by the Supreme Court. Pertinent opinions of the Court are therefore of peculiar interest." Reese, Judicial Jurisdiction Over Non-Residents; The Impact of McGee v. International Life Insurance Company, 13 Record of N.Y.C.B.A. 139, 140–41 (1958).

6. Id. at 146.

7. 1945, 326 U.S. 310, 66 S.Ct. 154, 158, 90 L.Ed. 95.

solit orders. This was held on the appeal, by Mr. Chief Justice Stone, to satisfy the fundamental test of judicial jurisdiction, *i. e.*, that there be "certain minimum contacts" with the state of the forum in order that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " It will not do, he wrote, to attempt to draw a fine line of distinction between what constitutes doing business and what does not, for the existence of jurisdiction does not depend upon whether a corporation's activity in the state "is a little more or a little less." Rather we must determine whether the demands of due process are met "by such contacts of the corporation with the state of the forum as make it reasonable * * * to require the corporation to defend the particular suit which is brought there." The ultimate question, then, is *reasonableness*.

■ Mr. Chief Justice Stone enumerated certain situations where the reasonableness test was satisfied, such as when the activities of the corporation in the state have not only been "continuous and systematic," but also when those activities give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given. Clearly, the casual presence of an agent, or even his conduct within a state of an isolated activity not connected with the subject matter of the suit, does not *necessarily* establish judicial jurisdiction. And yet it *may*, under Mr. Chief Justice Stone's exposition of the subject, if "some single or occasional act" by the corporate agent, because of its nature and the circumstances surrounding the occurrence, makes it reasonable to hold the actor accountable for the cause of action arising out of that act.

In 1957, the Supreme Court ruled on the facts in McGee v. International Life Ins. Co.[8] Mr. Justice Black noted that there existed a steady trend "toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents."[9]

In the McGee case, the insured, domiciled in California, purchased a life insurance policy from a company incorporated in Arizona which apparently solicited by mail, since the Arizona corporation maintained no office and had no agents or sales personnel in California. Thereafter the defendant, a Texas corporation, assumed the insurance obligations of the Arizona corporation, and mailed in Texas an offer to insure plaintiff in accordance with the terms of the original policy. The insured accepted the offer by mail from California and mailed premiums to Texas. The Texas defendant had no office nor employees in California; had not solicited there generally, and so far as the record disclosed, this was the only business it had done in California.

California has a statute (West's Ann. Cal.Ins.Code, §§ 1610–1620) which permits its residents to sue nonresident insurance companies in California courts on policies solicited by mail from outside the state or delivered within the state, or for which premiums were collected by mail, provided that the contract insured persons or property physically within the state. When the insured died and the company refused to pay his beneficiary, she sued under this statute and recovered.

On appeal from the refusal of the Texas courts to enforce the California judgment thus obtained, Mr. Justice Black held that it was "sufficient for purposes of due process that the suit was based on a contract which had a substantial connection with that State," where the suit was brought. This substantial connection was that (a) the contract had been delivered in California; (b) the premiums had been mailed from California; and (c) the insured was domiciled in California when he died.

8. 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.

9. Id., 355 U.S. at page 222, 78 S.Ct. at page 201.

■ We note that the acts which have a substantial connection with the state are acts which also have a substantial and, indeed, direct connection with the cause of action sued upon; *i. e.*, the cause of action arises by reason of acts so connected. When this double substantial connection exists, then, in view of the broad language of McGee v. International Life Ins. Co., supra, a single act or transaction may be the basis for jurisdiction over a nonresident defendant.[10]

This broad language of McGee v. International Life Ins. Co., supra, must likewise be considered in view of the Supreme Court's latest pronouncement on the subject in Hanson v. Denckla, 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283. There the Florida probate court attempted to exercise personal jurisdiction over a Delaware trustee by means of constructive service by publication, authorized by Florida statute. The trust had been created in Delaware of a corpus physically located therein by a resident of that state who had later become domiciled in Florida. There had been correspondence by mail between settlor and trustee, and income paid to the settlor in Florida. The settlor also exercised a power of appointment over the trust while living in Florida.

In Hanson v. Denckla, supra, Mr. Chief Justice Warren's opinion denied jurisdiction on these facts, finding that the "minimal contacts" required for jurisdiction did not exist, for:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

357 U.S. 235, 253, 78 S.Ct. 1228, 1239.

Thus there is established as essential some act by which the defendant "purposefully" seeks the privilege of conducting activities within the forum state and obtaining the benefit and protection of its laws. This essential act of the defendant must give rise to or result in a cause of action within that forum state. Having once established such substantial minimum contact, it must appear that the assumption of jurisdiction based thereon is in accordance with due process concepts of "fair play" and "substantial justice."

■ Having discussed the law as it stands today, we apply it to the facts of this case. "[T]he analysis of specific fact situations in the light of traditional rationalizations continues to be essential."[11] In our discussion of the specific facts here, for convenience we follow what has been recently called the "three rules which can be drawn from a combined reading of International Shoe, McGee and Hanson, against which all future litigation of a like nature may be tested."[12]

10. "Everyone concedes, of course, that jurisdiction, grounded upon a single act, must be limited to causes of action arising out of that act. To subject the nonresident individual, or corporation, to a general in personam jurisdiction because of such limited contact would be unfair and unreasonable, no matter how adequate the notice." Soboloff, Jurisdiction of State Courts Over Non-Residents in Our Federal System, 43 Cornell L.Q. 196, 208 (1957).

11. Ehrenzweig, Conflict of Laws § 28, p. 94 (1959). See also § 33.

12. "There are three rules which can be drawn from a combined reading of International Shoe, McGee and Hanson against which all future litigation of a like nature may be tested. * * * The rules are:

"(1) The nonresident defendant must do some act or consummate some transaction within the forum. It is not necessary that defendant's agent be physically within the forum, for this act or transaction may be by mail only. A single event will suffice if its effects within the

## A—The Activity of the Defendant in California

Here the defendant, never qualified to do business in California, had no paid employees in the State; no office or sample room; no office address; no telephone listing. It accepted the order, placed by McCauley, in Louisiana; it shipped the product direct to Arizona. The product was never in California, and Higgins' distributor, McCauley, knew it could not be shipped into California. McCauley was an authorized distributor or wholesaler and factory representative of the defendant in California, but had no authority to act as agent for defendant. Higgins shipped at least $1,000,000 of merchandise into California each year, but such merchandise had no connection with the contract in this case. Two of defendant's officers had contacted McCauley and Reeder regarding expedition of this contract, but took no orders. The conferences here were claimed to be incidental to the officers of defendant passing through California, on their way to or from Hawaii.

We do not find that the defendant appellee transacted any substantial business or did any "purposeful act" within California whereby it acquired a legally protected right. It did exhibit samples at home shows and fairs, but even then did not have representatives at these shows. Mere advertising in the forum state, when standing alone, seems not a sufficient act to establish the substantial minimum activity.[13] Higgins did correspond with its factory representatives and distributors who purchased Higgins' products and resold them. The factory representatives were independent contractors and not servants or agents. They set their own ultimate prices for the Higgins products.

Higgins' acts of conferring with Reeder in California were concerned with an already vested right—an attempt to effect delivery of the blocks in accordance with the terms of the contract, whenever the delivery date could be set. Higgins had no such contracts with Reeder until *after* McCauley had sold to Reeder and some of the flooring had been shipped. In this respect the factual situation more closely resembles the Hanson case, supra, than it does McGee, supra.

Whether the flooring was delivered F.O.B., New Orleans, freight allowed to point of destination, or F.O.B. some point in California, seems to be in dispute. We do not consider either method of operation particularly important, and certainly it is not controlling.

## B—The Cause of Action Arising From Defendant's Activity in the Forum

Nowhere in the complaint is it alleged where any of the "contacts" between Higgins and the owner or the general contractor of the Arizona building took place; where the oral representations or warranties were made; where the samples were shown. The implied warranty of fitness was discovered to be untrue in Arizona.

state are substantial enough to qualify under Rule Three.

"(2) The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum. It is conceivable that the actual cause of action might come to fruition in another state, but because of the activities of defendant in the forum state there would still be a 'substantial minimum contact.'

"(3) Having established by Rules One and Two a minimum contact between the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the due process tenets of 'fair play' and 'substantial justice.' If this test is fulfilled, there exists a 'substantial minimum contact' between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards analogous to those of forum non conveniens."
47 Georgtown L.J. 342, 351-52 (1958).

13. MacInnes v. Fontainebleau Hotel Corp., 2 Cir., 1958, 257 F.2d 832; Miller v. Surf Properties, Inc., 1958, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874. See also, McGriff v. Charles Antell, Inc., 1953, 123 Utah 166, 256 P.2d 703.

It appears clear the contract under which the flooring came to Arizona was a contract between Higgins and McCauley. There was no contract between Higgins and Reeder. There was, of course, a contract between McCauley and Reeder.

It is difficult to see how any facts showing defendant's activities within the forum state of California gave rise to any of the causes of action contained in the complaint. The shipment went to Reeder in Arizona. Any specific activity in California by Higgins' agents, subsequent to the contract, related only to time of shipment.

We realize that Perkins v. Benguet Consol. Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, is authority for the theory that the cause of action need not arise out of the activity of the nonresident within the forum state. But this was an earlier case than either McGee or Hanson, and rests upon its own peculiar facts. Several states have statutes authorizing the taking of jurisdiction on the basis of a single transaction, and these usually require that the cause of action arise out of the specific activity of the defendant occurring in the forum state, as distinguished from a mere general activity within the forum state, or a more specific activity in connection with some different subject matter.

*C—The "Substantial Minimum Contact" Between Defendant and California*

Here we are told we should weigh and consider the inconvenience to plaintiff of a refusal to entertain the action, the benefits which defendant has derived from its activities within California, and the other basic equities of the particular factual situation. This is the "estimate of inconveniences" which Judge Learned Hand pioneered in Hutchinson v. Chase & Gilbert,[14] which was expressly ap-proved by the Supreme Court in International Shoe,[15] and again commented upon by Judge Hand in Kilpatrick v. Texas & P. Ry. Co.[16] There he said the "estimate of the inconveniences" is "indistinguishable from the issue of 'forum non conveniens.' " "It should be obvious that Judge Hand's statement * * * does not mean that the two issues are one and the same, but rather that similar considerations will often be relevant to both." [17]

Mr. Justice Jackson in Gulf Oil Corp. v. Gilbert [18] describes some of the factors to be weighed under the "forum non conveniens" doctrine.

"Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. * * * [P]laintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. * * *

"Factors of public interest also have place in applying the doctrine. * * * There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial * * * in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle prob-

14. 2 Cir., 1930, 45 F.2d 139.

15. 326 U.S. at page 317, 66 S.Ct. at page 158, 90 L.Ed. 95.

16. 2 Cir., 1948, 166 F.2d 788, 791.

17. 47 Georgetown L.J. at 356.

18. 1947, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055.

lems in conflict of laws, and in law foreign to itself." [19]

We think a consideration of these factors leads us to the inescapable conclusion that as to appellee Higgins the "estimate of inconveniences" weighs heavily in its favor. We need not point out again the slim thread of facts which connects Higgins with the forum state which the appellant has chosen. We do feel that it is significant that this is not a case where the state of California "has a manifest interest in providing effective means of redress for its residents," to use the words of Mr. Justice Black in the McGee case. Reeder, the plaintiff here, is not a California corporation but an Arizona corporation, doing business in Arizona by use of the very goods which are the subject of this suit. We note, also, that a very recent federal court case in New York has taken this view under a statute similar to that in question in the McGee case.[20] We think it a sound and reasonable view under the facts of this and similar cases.

II—Did the Court Err in Holding the Defendant Was Not Amenable to Service of Process under California Law?

We think it did not.

Appellant relies largely on Henry R. Jahn & Son, Inc. v. Superior Court;[21] Eclipse Fuel Engineering Co. v. Superior Court;[22] Duraladd Products Corp. v. Superior Court;[23] Gray v. Montgomery Ward, Inc.[24] To this counsel for appellant would add Carl F. W. Borgward G. M.B.H. v. Superior Court, Cal.1958, 330 P.2d 789 (decided after the instant case had been orally argued).

The general rule controlling these cases is that under the peculiar facts of each of them, the corporation sought to be made amenable to process was "present within the state sufficiently to constitute it just and equitable that it be amenable to process within the state." [25]

"Not 'any activity' of a foreign corporation in the state will make it amenable to process and there is no precise test that can be applied in all cases. It 'is the combination of local activities conducted by such foreign corporation— their manner, extent and character— which becomes determinative of the jurisdictional question.' " [26] It must be shown that the corporation "maintained in the state" a representation which "gave it in a practical sense, and to a substantial degree, the benefits and advantages it would have enjoyed by operating through its own office or paid sales force * * *." [27]

We find none of these cases factually so similar to the instant case as to be controlling. For example, in Henry R. Jahn & Son, Inc., supra, the California supreme court said:

"Jahn's purchase of goods in this state is a regular part of its business. * * * [T]here is no distinction for jurisdictional purposes between regular selling and regular buying * * *.

\* \* \* \* \* \*

"Whenever litigation arises out of business transactions conducted across state lines between parties whose principal places of business are in different states, there may be hardship to the party required to litigate away from home. There

19. Id., 330 U.S. at page 508–509, 67 S.Ct. at page 843.

20. Clifton Products, Inc. v. American Universal Ins. Co., D.C.S.D.N.Y.1959, 169 F.Supp. 842. Cf., also, Parmalee v. Iowa State Traveling Men's Ass'n, 5 Cir., 1953, 206 F.2d 518, 522, 44 A.L.R.2d 410.

21. 1958, 49 Cal.2d 855, 323 P.2d 437.

22. 1957, 148 Cal.App.2d 736, 307 P.2d 739.

23. 1955, 134 Cal.App.2d 226, 285 P.2d 699.

24. 1957, 155 Cal.App.2d 55, 317 P.2d 114.

25. Fielding v. Superior Court, 1952, 111 Cal.App.2d 490, 494, 244 P.2d 968, 970.

26. Martin Bros. Electric Co. v. Superior Court, 1953, 121 Cal.App.2d 790, 793, 264 P.2d 183, 185.

27. Sales Affiliates, Inc. v. Superior Court, 1950, 96 Cal.App.2d 134, 136, 214 P.2d 541, 542.

is no constitutional requirement, however, that this hardship must invariably be borne by the plaintiff whenever the defendant is not deemed present in the state of plaintiff's residence. In some circumstances there is adequate basis for jurisdiction when the defendant has elected to deal with the plaintiff even though only by mail. McGee v. International Life Ins. Co. [355 U.S. 220], 78 S.Ct. 199, 201 [2 L.Ed.2d 223]; Parmalee v. Iowa State Traveling Men's Ass'n, 5 Cir., 206 F.2d 518, 522. Again, there is jurisdiction when the cause of action arose out of the breach of a contract made and to be performed in the state (Compania De Astral, S.A. v. Boston Metals Co., 205 Md. 237, 107 A.2d 357, 108 A.2d 372, 49 A.L.R.2d 646, certiorari denied 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738; see also, S. Howes Co. v. W. P. Milling Co., Okl., 277 P.2d 655, 657–658) or even out of a mere isolated act in the state by the defendant or his agent. Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673; Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193; Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Johns v. Bay State Abrasive Products Co., D.C., 89 F. Supp. 654.

"We need not here determine whether an action arising from an isolated purchase of goods here through interstate communication would subject Jahn to the jurisdiction of the California courts. Jahn made regular purchases from plaintiff as its exclusive export agent. It took title to the goods in this state. It directed its agent how and where to ship them. Even after it ceased doing business with plaintiff, it entered into a similar course of business dealings with defendant partnership. It reaped the benefits of our laws that protected its goods while they were here, and it had access to our courts to enforce any

rights in regard to these transactions. The alleged cause of action grew directly out of Jahn's relationship with plaintiff and the partnership in this state. See Giusti v. Pyrotechnic Industries, 9 Cir., 156 F.2d 351, 354; Steiner v. 20th Century-Fox Film Corp., 9 Cir., 232 F.2d 190, 198; De Golia v. Twentieth Century-Fox Films Corp., D.C., 140 F.Supp. 316. Although some of the evidence may be more readily available in New York, there is other evidence already here. That which must be secured from overseas can as easily be presented here as in New York."

Id., 49 Cal.2d at page 859–861, 323 P.2d 437, 440–441.

In the Eclipse Fuel case, supra [307 P.2d 742], Chester C. Smith, the corporation's sales representative in Southern California, acted under a written contract which provided him a commission on the sales of boilers, or allowed Smith to buy and sell on his own account, at a discount. Smith agreed not to handle competing lines; to furnish the corporation with copies of any correspondence concerning the sales of boilers, and upon termination of the agreement, "all correspondence, records, literature," customer lists and other records, were to be turned over to the corporation. Smith, through his Thermal Engineering & Equipment Company, sometimes maintained equipment for a customer, kept on hand a stock of spare parts, obtained and replaced defective parts. Various officers of Eclipse came to California, and talked business with Smith's employees. The court emphasized, but did not wish to overemphasize the importance of the "continuity" of business activities (307 P.2d at page 743–744).

In Duraladd Products Corp., supra [134 Cal.App.2d 226, 285 P.2d 703], the appellant finds perhaps the strongest case for its position. But there a local corporation "was not only an exclusive distributor" of aluminum ladders, "but, insofar as it assembled parts into a completed whole, it participated in the final

stages of manufacture of Duraladd's products." Duraladd "maintained a continuous course of business with the California company and continued after the original installation of the assembly equipment to maintain an interest in seeing that the assembling was done properly." It furnished equipment, material, and made annual visits.

In Gray v. Montgomery Ward, Inc., supra [155 Cal.App.2d 55, 317 P.2d 115], the manufacturer's agent investigated and recommended dealers to the defendant Duro-Metal Products Company; distributed brochures, and acted "under the supervision" of Duro-Metal's sales manager. He adjusted complaints for Duro-Metal. The agent's sole compensation was a commission on sales.

And compare the facts in West Pub. Co. v. Superior Court.[28]

In the Borgward case, supra [330 P. 2d 792], Borgward was selling several million dollars worth of its products in this state annually. These were sold through its independent importer, Earle C. Anthony, Inc., "who purchases and takes title to its products in Germany." Up to this point, the facts are strikingly like those appearing in our instant case. But then the California supreme court continues:

"Plaintiffs do not seek to found jurisdiction on the fact alone, however, that Borgward's products are sold in this state through Anthony, but *on that fact coupled with the acts done in this state by Borgward's agent Knemeyer* in negotiating and arranging for the distribution of Borgward products by independent contractors, and they point out that *their alleged cause of action is directly related* to Knemeyer's activities here."

330 P.2d at page 792. [Emphasis added.]

The California court then considers such acts of Knemeyer, the Borgward agent, in detail.[29]

"Approximately a year later, after a dispute had arisen between Thomson and some of its distributors including plaintiffs, Knemeyer returned to California and with Borgward's approval, terminated Thomson as importer, and appointed Anthony. At that time Knemeyer met with plaintiffs and other distributors and according to plaintiffs made the oral agreement that is the subject of their action against Borgward.

"After Anthony informed plaintiffs that their contract would not be renewed, plaintiffs wrote Borgward and received a cable in reply stating that the matter was being referred to Knemeyer, then enroute to the United States and Canada, who would get in touch with plaintiffs in California. Process was served on Knemeyer shortly after he arrived in California on this trip.

"Disregarding the numerous affidavits setting forth extrajudicial statements of Knemeyer to California distributors and dealers that he had full authority to act for Borgward with respect to the importation, distribution, and sales of its products in California (see, Hilyar v. Union Ice Co., 45 Cal.2d 30, 42, 286 P.2d 21; Code Civ.Proc. § 1870(5)), we conclude from the foregoing evidence that Knemeyer performed important services for Borgward in California, namely, the

---

28. 1942, 20 Cal.2d 720, particularly at page 728, 128 P.2d 777.

29. "Knemeyer visited California for periods of several days on three occasions in 1956 and 1957. In February 1956, with the approval of Borgward, he executed a contract in the form of a letter from Thomson to Borgward in Los Angeles appointing Walter J. Thomson Co., Ltd., as exclusive importer. It described Knemeyer's activities as follows:

"'1. The territory which you originally granted to us as sole importers had been broadened by Mr. Knemeyer to include all of the trading area territory lying west of the Mississippi River.

"'2. Mr. Knemeyer has removed Bob Knapp as distributor for California and has approved the appointment of Bob Knapp as exclusive dealer for the City of Pasadena. * * *

"'3. Mr. Knemeyer has approved the appointment of Messrs. Ed. Van Horn and Gordon Reid (who are forming a new corporation) as distributors for Northern California, Oregon, Washington, Idaho and the northern part of Nevada. * * *

"'4. Mr. Knemeyer has approved appointment of Mr. Whitney Lyon as distributor for all of the remaining territory not specifically mentioned in paragraph 3 above. * * *'

We think the facts of the instant case more closely resemble those cases where amenability to state service has been denied. People's Tobacco Co. v. American Tobacco Co., 1918, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587; Green v. Chicago, Burlington & Quincy Ry. Co., 1907, 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; MacInnes v. Fontainebleau Hotel Corp., 2 Cir., 1958, 257 F. 2d 832; Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc., 4 Cir., 1956, 239 F. 2d 502; Mueller Brass Co. v. Alexander Milburn Co., 1945, 80 U.S.App.D.C. 274, 152 F.2d 142; W. H. Elliott & Sons Co. v. E. & F. King & Co., D.C.D.N.H.1956, 144 F.Supp. 401; Miller v. Surf Properties, Inc., 1958, 4 N.Y.2d 475, 176 N. Y.S.2d 318, 151 N.E.2d 874; McGriff v. Charles Antell, Inc., 1953, 123 Utah 166, 256 P.2d 703. Cf., also, Davis v. Farmers' Co-op. Equity Co., 1923, 262 U.S. 312, 43 S.Ct. 556, 67 L.Ed. 996.

It may be urged that several of these cases last cited are early cases. That is true. We recognize that all the old rules do not still apply. But we cannot rule, as a matter of law, that the court below erred in refusing to exercise jurisdiction over Higgins. To do so would in effect sanction the filing of suit in any federal district court in the United States in whose geographical area a national distribution of manufactured products was advertised, sold, or delivered, irrespective of where any contract which was allegedly the basis of the lawsuit was negotiated or consummated. Thus one of the very essential ingredients of the doctrine of *forum non conveniens* would be defeated. While this is not controlling in such a case as this, it is a comparable important factor to be considered.

We recognize the courts generally have come a long way from Pennoyer v. Neff, supra, but if they are to come as far as appellant would urge us here, that final step would be a first one, and must come from a higher court.

For the reasons stated above, and in light of those authorities based on facts more closely resembling those found here, we cannot conclude that the court below committed error in holding that "the quality and nature of [its] activities in relation to the fair and orderly administration of the laws" does not require that Higgins be subject to the jurisdiction of the local district court. International Shoe Co. v. Washington, supra.

The judgment below is affirmed.

establishment and maintenance of a satisfactory importing, distributing, and sales organization. Regardless of how closely these activities may have been supervised from Germany, they nevertheless were activities of Borgward through its agent here, and were sufficient to constitute Knemeyer Borgward's 'general manager in this State' (Corp.Code § 6500) for purposes of service of process if Borgward was doing business here. Charles Ehrlich & Co. v. J. Ellis Slater Co., 183 Cal. 709, 713, 192 P. 526; Eclipse Fuel Engineering Co. v. Superior Court, 148 Cal.App.2d 736, 745–746, 307 P.2d 739; Milbank v. Standard Motor Const. Co., 132 Cal.App. 67, 71, 22 P.2d 271.

"It thus appears that Borgward is not merely a manufacturer who sells its products in Germany knowing they will reach this state. It has actively undertaken to promote and protect its market in California by sending its agent to negotiate contracts here. It reaps the benefit of the local market and has access to our courts to enforce any rights growing out of its transactions here. Plaintiffs' alleged cause of action grew directly out of their relationship with Borgward's agent here and Borgward's dealings with its local importer Anthony. Plaintiffs are not seeking needlessly to inject Borgward into a controversy concerning only them and Anthony. If plaintiffs are able to prove the existence of their contract with Borgward and its breach, they may nevertheless fail to prove that it is binding on Anthony or to establish any cause of action against Anthony. Obviously, however, it is preferable, if possible, to settle the entire controversy in one action, here or in Germany. Even if it is assumed that plaintiffs could secure jurisdiction over Anthony in a German court, since all of the relevant events occurred in California the burden on plaintiffs and Anthony of prosecuting and defending in Germany would far outweigh the burden on Borgward of defendant here." Id., 330 P.2d at pages 792–793.