BENNIE THOMPSON & JORENA THOMPSON

Plaintiffs

vs.

WAYNE LOVELADY'S FRONTIER

FORD & FIRST NATIONAL BANK

OF ALBUQUERQUE

Defendants

Decided on May 15, 1978

Timothy Flynn-O'-Brien, D.N.A., Shiprock, New Mexico and Paul Frye, D.N.A., Crownpoint, New Mexico for Plaintiffs

R. Thomas Dailey, Dailey & Cardin, Farmington, New Mexico and Bruce E. Pasternack, Albuquerque, New Mexico, for Defendant Frontier Ford

R. Thomas Dailey, Dailey & Cardin, Farmington, New Mexico, for Defendant First National Bank of Albuquerque

JOHN, District Judge

This is a ruling on defendants' Motions to Dismiss the Complaint against them on grounds that the Court lacks subject matter and personal jurisdiction. All Parties have agreed that these issues are to be decided on the briefs as submitted to this Court and that oral argument is unnecessary and therefore waived.

-282-

Plaintiffs are Bennie and Jorena Thompson, enrolled members of the Navajo Tribe and residents of the Navajo Reservation. Defendants, Wayne Lovelandy's Frontier Ford (hereinafter Frontier Ford) and the First National Bank of Albuquerque (hereinafter First National) are engaged respectively, in the businesses of selling and financing new and used motor vehicles in Albuquerque, New Mexico.

The Complaint alleges that on or about April 22, 1977, the defendants or their agents and employees did remove for repossession purposes, plaintiffs' vehicle from land subject to the Tribe's jurisdiction, without written consent from plaintiffs and without any Order from the Navajo District Court and thereby violated Title 7, Section 307 of the Navajo Tribal Code and are therefore civilly liable to plaintiffs pursuant to Section 309 of the same Title 7.

The Court does not address the merits of this case at the present time. For purposes of ruling on these Motions, the allegations in the Complaint will be treated as true.

The sole question to be determined in this opinion is whether or not the Navajo District Court may validly assert subject matter and personal jurisdiction over the defendants in the circumstances of this case. The Court finds that under the Navajo Tribal Code and under the Constitution and laws of the United States, it may validly assert such jurisdiction, but that personal jurisdiction has not been properly asserted over the defendants in this case.

## Subject Matter Jurisdiction

The statute conferring subject matter jurisdiction upon the Court in repossession cases such as this is, 7 N.T.C. Section 133, which reads in the relevant part;

> The Trial Court of the Navajo Tribe shall have original jurisdiction over...(e) Miscellaneous. All other matters over which jurisdiction has been heretofore vested in the Navajo Tribal Courts of Indian Offenses, or which may hereafter be placed within the jurisdiction of the Trial Court by re-solution of the Tribal Council. (emphasis added)

This statute was passed as Tribal Council Resolution CO-69-58 on October 16, 1958. Pursuant to the authority granted to it in Section 133(e), supra, the Navajo Tribal Council subsequently passed Section 307, defining procedures necessary for repossessions and Tribal Council Resolution CJN-53-69, passes on June 4, 1969 (7 N.T.C. Section 309, providing for the civil liability of any persons or businesses violating Section 307). By virtue of these subsequent resolutions, all repossession cases based on alleged violations of Section 307 of Title 7 of the N.T.C. and the parties involved therein, were placed under the original jurisdiction of the Navajo Trial Courts by affirmative legislative action.

Subsection (e) of Section 1333 of Title 7, N.T.C. is the relevant subsection upon whch jurisdicton is based in this case, not only because of repossession statutes were passed subsequent to the effective date of Section 133, but also because the defendants are non-Indians. Subsection (b), which defendants argue should be con-

trolling, reads as follows:

> Civil Causes of Action. All civil actions in which the defendant is an Indian and is found within its territorial jurisdiction.

From its language alone it clear that subsection (b) does not provide the basis for jurisdiction in cases based on allegedly wrongful actions by non-Indians.

Subsection(e), "Miscellaneous" in Section 133 has been held to be the basis for Navajo Trial Court jurisdiction over non-Indians. The case of Navajo Tribe of Indians v. Orlando Helicopter Airways, (App. Ct. 1972) established the principle that a cause of action may be "a special type of action not to be included under 'all civil actions' in Title 7, N.T.C. Section 133(b)." Id. at 2.

In accordance with the reasoning in the Orlando case, this Court finds a wrongful repossession action, based on 7 N.T.C. Section 307, is a "special type of action", not within the meaning of subsection (b) of Section 133 of Title 7 of the Navajo Tribal Code, for the following reasons: It is based on legislation passed subsequent to the effective date of Section 133 and passed in order to remedy a specific problem not previously covered in the Navajo Tribal Code; the problem sought to be remedied by the legislation was of a type known to be caused substantially by the activities of non-Indians as well as Indians; and the cause of action is not clearly or traditionally "civil" in nature, but is quasi-criminal in that it is derived from he common law crime of breach of the peace./1. See, Orlando, supra at 2.

Defendant First National contends that because there is no express grant of jurisdicton over causes of action involving non-Indians, that it should not be presumed that the Tribal Council intended jurisdiction in such cases. This argument is extremely unrealistic and without merit. The Orlando case has already established that subsection (e) of Section 133 of 7 N.T.C. contemplates jurisdiction over non-Indians. Orlando, supra at 2.

Additionally, the language in Section 309 of Title 7, N.T.C. is all-inclusive, unlike the language in subsection (c) of Section 308 of the same Title. Sectin 308 provides expressly for a separate criminal penalty for Indian violators of Section 307. If the Tribal Council had intended to limit the civil penalties established in Section 309 to Indians only, it would have done so expressly as it did in part in the preceding Section of the Code. The language of Section 309 however, is not limited, but refers generally to "any person" and "any business" as incurring civil liability. Anyone with a minimum level of intellectual consciousness is aware of the fact that almost all, if not all, conditional sellers and finance institutions in the area of this Reservation are owned and operated by non-Indians (and are located outside of lands subject to the Navajo Tribe's territorial jurisdiction). It is almost necessary, and it is certainly fair to presume that the Navajo Tribal Council was also aware of this fact at the time it passed the repossession laws. Thus, the Council's use of broad, inclusive language in defining what class of persons and businesses these laws were meant to restrain, indicates that non-Indian non-residents and non-Indian foreign businesses were implicitly included in this case are within the subject

matter jurisdiction authorized by the above-mentioned statutes.

Furthermore, there is no need for any "express" statutory provision for jurisdiction over the actions of non-Indians which occured on lands subject to the jurisdiction of the Navajo Tribe and which incur only civil liabilities. Indian governments have inherent and exclusive authority to regulate their "internal affairs" even when these affairs involve non-Indians. Williams v. Lee, 358 U.S. 217, 3 L.Ed.2d 251, 255-256 (1959). The manner of effectuating a repossession of personal property from a Navajo Indian upon lands subject to the jurisdiction of the Navajo Tribe is an "internal affair" of the Navajo Government in that it concerns the maintenance of public peace and safety on those lands entrusted to the guardianship of the Navajo People by tradition as well as by treaty.

Defendant First National's reliance on the case of Oliphant v. The Suquamish Indian Tribe, 46 U.S.L.W. 4210 (March 6, 1978) is not persuasive because the case is entirely inopposite to the issues before the Court. The holding and ratonale of the Oliphant decision are narrowly confined to the issue of criminal jurisdiction only. An even more recent United States Supreme Court decision has reaffirmed the Williams v. Lee principle of inherent tribal sovereignty over internal affairs in civil matters and in addition has indicated that the Oliphant decision in no way altered this fundamental principle of Indian law. See, United States v.Wheeler, 46 U.S.L.W. 4243 (March 22, 1978).

In conclusion then, this Court finds that it clearly has subject matter jurisdiction over the issues in this case.

Personal Jurisdiction.

As to the validity of this Court's asserting personal jurisdiction over the defendants, the initial question is a constitutional one, i.e. whether the Navajo Nation has the power within the standards of due process to assert personal jurisdiction over foreign corporations as a consequence of such corporations' acts in Navajo territory such as the alleged repossession in this case. Title II, Civil Rights Act of 1968, Sec. 202(8). The Court finds that it has such power according to the modern expansions of the "minimum contacts" standard emanating from the cases of Internanational Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) and Milliken v. Meyer, 311 U.S. 457, 463 (1940)./2

The single act of unlawful repossession perpetrated upon the lands subject to the jurisdiction of the Navajo Tribe is a sufficient "contact" and reasonable basis for the Tribe's assertion of personal jurisdiction over the defendants within the meaning of due process of law. Reeder Contractors of Arizona v. Higgins Industries, Inc., 265 F.2d 768, 772-773 (9th Cir. 1959)/3; Hansen v. Denckla, 357 U.S. 235, 253, 2 L.Ed2d 1283 (1958); McIntosh v. Navaro Seed Co., 81 N.M. 302, 466 P.2d 868, 870 (1970); Navajo Tribe v. Orlando Helicopter Airways, Inc., supra at 3.

Extraterritorial service of process by registered mail is a sufficient method of acquiring personal jurisdiction over non-resid-

-288-

dent defendants since it is a method reasonably calculated in the circumstances, to appraise the defendants of the action pending against them and to give them an opportunity to present their objections to it, as they have done in their Motions to Dismiss in this case. Mullane v. Central Hanover Bank, 339 U.S. 306, 94 L.Ed. 865, 873 (1950); McGee v. International Life Insurance Co., 335 U.S. 220, 2 L.Ed.2d 223 (1957).

The second question to be answered in determining the validity of this Court's personal jurisdiction over defendants is whether the Navajo Tribal Council has exercised its inherent legislative power by manifesting its intent to assert jurisdiction over non-resident businessess or individuals. See, Pulson v. American Rolling Mill Co., 170 F.2d 193 (1st Cir. 1958)./4

This second question is also answered in the affirmative. Title 7 of the Navajo Tribal Code, Section 133 (e), infra, implicitly asserts Navajo Nation jurisdiction over no-Indian non-resident businesses and individuals. The Navajo Court of Appeals has interpreted this section of the Code to be a legislative assertion of subject matter jurisdiction. Orlando, supra at 2 and 3.

Particularly due to the language of subsection (e), it was the obvious intent of the Navajo Tribal Council that Section 133 of Title 7 of the Code should serve as a general, open-ended, statutory assertion of Tribal jurisdiction over all persons and subject matters which directly influence or constitute the "internal affairs" of the Navajo Nation and which might be brought before the Navajo Courts within the

-289-

limits set by the United States Constition".

"Territorial" jurisdiction is treated entirely separately in Title 7, N.T.C. Section 134. This indicates that except insofar as due process limitations on jurisdiction are relevant, the assertions of jurisdiction in Section 233 are intended to apply to persons regardless of their physicial presence or absence from the territorial jurisdicition of the Nation.

Furthermore, unless Section 133 is construed to be an assertion of personal as well as subject matter jurisdiction, the obvious intent of the Tribal Council would be thwarted. If the section were to be construed otherwise, then the laws of the Nation and duties of the courts would be reduced to meaningless scratchings of pen and ink. Common sense would be violated and the powers of the courts would be undermined, for it is impossible to enforce laws except against or on behalf of individuals and personal jurisdiction is the logical and practical prerequisite to such enforcement. Certainly it is fair to infer that it was the intent of the Tribal Council in its general jurisdiction statute, to assert personal jurisdiction over persons alleged to have violated the civil laws of the Nation.

There is no unfairness to defendants in this findings since the circumstances when the Navajo Courts will assert personal jurisdiction over non-Indian non-residents have been clearly specified in Navajo law since at least 1972 by the Orlando case, supra. There the Appeals Court stated:

"When a non-Indian enters Indian land for the

> purpose of doing business thereon, he may very
> well be considered to have submitted himself
> to the jurisdiction of the Indian Courts."
> Id. at 3.

Additionally, since 1969 it was obvious in the all-inclusive language of 7 N.T.C. Section 309 referring to "any person" and "any business", that the Tribe had manifested its intent to assert jurisdiction over such persons as the defendants in this case. See, infra at 3.

The determination of under what circumstances they will choose to exercise jurisdiction over a foreign corporation, under and according to the laws of the state, "is reserved for the courts of the (forum) state." Perkins v. Benquet Mining Co., 342 U.S.437, 96 L.Ed. 485 (1951). Cf. Ark-La Feed and Fertilizer Co. v. Marco Chemical Co., 292 F.2d 197, 201 (8th Cir. 1961); Mitchum v. Mitchum, 518 S.W.2d 362 (Texas 1975).

The third question to be answered in determining the question of the validity of personal jurisdiction in this case is, has the Tribal Council anywhere provided jurisdiction over non-Indians outside the territorial jurisdiction of the Tribe? Again, the answer must be in the affirmative.

Defendant First National contends that there is no statute in the Code which "contemplates" jurisdiction over persons not physically present within the territorial jurisdiction of the Tribe. The conclusion that First National urges upon the Court is that extraterritorial service of process on non-Indians by certified mail is not authorized by the controlling law, the law of the forum.

The Court agrees that Navajo law is controlling on the issue of what methods of service and notice are authorized to obtain personal jurisdiction. See, Restatement (Second) Conflicts, Section 126. However, the Court does not agree that the forum has failed to provide a means for obtaining personal jurisdiction by extraterritorial service of process on non-Indians by certified or registered mail. The Court finds - effective distinction between registered and certified mail to be meaningless to - issues in this case.

By an affirmative legislative act, 7 N.T.C. Section 301 (a), the Navajo Tribal Council delegated to the judicial branch, the responsibility and authority to make rules governing all procedural matters coming before the courts of the Nation. The provision reads as follows:

> "A majority of the judges of the Trial Court of the Navajo Tribe may adopt rules of pleading, practice and procedure applicable to any or all proceedings in the Trial Court and the Court of Appeals..."

Procedural rule-making power may legitimately be delegated to the judiciary, (without offending the principle of separation of powers). Heat Pump Equipment Co. v. Glen Alden Corp., 380 P.2d 1016 (Ariz. 1963. Although most states have vested their courts with the judicial branch power by means of a state constitution, the Navajo Nation has done this by statute: 7 N.T.C. Section 101, which states:

> "The Judicial Branch of the Navajo Tribal government shall consist of the Trial Court of the Navajo Tribe and the Court of Appeals of the Navajo Tribe."

Rules affecting service of process are well-recognized as

being "procedural" in nature since they relate "merely to the manner and means by which a right to recover is enforced." Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 446, 90 L.Ed 185 (1946); McGee v. International Life Insurance Co., supra. (rule allowing service by registered mail to be made upon foreign corporations did not enlarge or impair substantive rights and was therefore, "procedural").

Pursuant to the authority vested in it by 7 N.T.C. Section 301 (a) the Navajo Judiciary has enacted a Service of Process rule, Rule 3 of the Rules of Civil Procedure, which contemplates and implicitly authorizes such methods of service as extraterritorial service by certified mail, in the following language:

> ... Upon proper circumstances, within the limits of jurisdiction and constitutionality, the judge may authorize service of process by such other means as he deems appropriate."

Since extraterritorial service by certified mail is established as a valid method for acquiring personal jurisdiction over non-resident defendants, per Mullane and McGee, supra, it is fair to infer that such method of service is intended by and is within the meaning of Rule 3. Rule 3 allows a judge to act only within the limits of the jurisdiction already established by the legislature and therefore, the Rule does no violence to the principle of separation of powers.

An additional basis for this Court's finding that Navajo law authorizes extraterritorial service by registered or certified mail is the language in paragraph two of Rule 3, which expressly authorizes service by registered mail in the following sentence: "If personal

-293-

service cannot be effected within five days, notice may be given by registered mail."

There is no language in Rule 3 that purports to limit service by registered mail to intraterritorial parties nor does there appear to be any law requiring express provision for extraterritorial service in these circumstances. At any rate, the Navajo Court of Appeals has interpreted Rule 3 to be an authorization of extraterritorial service of process by mail, in the case of <u>Yazzie v. Wyaco, Jr.</u> (App. Ct. March 1977) at 2. The holding of the Wyaco case affirmed a trial court's assertion of personal jurisdiction by means of extraterritorial service by mail upon an Indian member of the Navajo Tribe who was living temporarily off the Reservation. The <u>Wyaco</u> case did not deal with the propriety of such service upon non-Indians, but it is relevant to the case currently before this Court insofar as it indicates that despite the lack of express language regarding extraterritorial service by mail, Rule 3 of the Rules of Civil Procedure implicitly authorizes such service.

In conclusion, since the Navajo legislative has provided for subject matter and personal jurisdiction over non-Indian non-resident businesses and individuals by virtue of 7 N.T.C. Section 133(e) and 7 N.T.C. Sections 307-309; and since the Navajo legislature has effectively ratified extraterritorial service by registered mail insofar as 7 N.T.C. Section 301(a) unconditionally delegates the choice of method of service to the judiciary; and since the judiciary has exercised this power by passing Rule 3 of the Rules of Civil Procedure, this Court finds that extraterritorial service of process by registered mail is authorized by the laws of the Navajo Nation and personal jurisdiction over such defendants as Frontier Ford and First National Bank may be

-294-

asserted by this Court.

However, this Court also finds that the defendants were not served with process in accordance with the terms of Rule 3 of the Rules of Civil Procedure since there was no showing by plaintiffs in this case that personal service could not have been effected within five days, and no judicial authorization of service made extraterritorially was obtained. For these reasons the service made upon defendants Frontier Ford and First National Bank on the 28th day of September, 1977, is hereby quashed and plaintiffs are instructed to petition the Court for authorization to serve defendants extraterritorially by registered mail after showing that effective personal service cannot be made within five days, in strict accordance with Rule 3 of the Rules of Civil Procedure if they wish to pursue their case against the above-named defendants.

---

1. In the Preamble to Tribal Resolution CJN-53 69 supra, the Council explained, "5. The purpose of Resolution CF-26-68 (7 N.T.C. Section 307) is to prevent violence and breach of the peace in the re-possession of personal property of Navajo Indians from land subject to the jurisdiction of the Navajo Tribe..."

2. See, Shaffer v. Heitner, 45 U.S.L.W. 4849 (June 24, 1977) wherein the Supreme Court explains the evolution in the federal courts away from the notion of physical power and territorial sovereignty as the grounds for state assertions of jurisdiction over person to the current basis for personal jurisdiction, which is the reasonableness of the assertion in light of the "relationship among the defendant, the forum and the litigation". Id. at 4845.

3. "a single act or transaction may be the basis for juris-diction over a non-resident defendant when...the defendant's agent's acts have a substantial connection with the (forum) state and also have a substantial connection with the cause of action sued upon." Id. at 773.

4. "There is nothing to compel a state to exercise juris-diction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state as made by its legislature." Id. at 194.