GYPSY PIPELINE COMPANY, a Colorado corporation, John R. Marchi, a/k/a J. R. Marchi, and B. J. Marchi, Plaintiffs,

v.

IVANHOE PETROLEUM CORPORATION, a Delaware corporation, Viola E. Oliver, Boyd J. McGee, and Donald C. Gohsman, Defendants.

Civ. A. No. 66-C-43.

United States District Court
D. Colorado.

Aug. 4, 1966.

Holland & Hart, Denver, Colo., for plaintiffs.

Dawson, Nagel, Sherman & Howard, Denver, Colo., for defendants.

WILLIAM E. DOYLE, District Judge.

The individual defendants herein, Viola E. Oliver, Boyd J. McGee and Donald C. Gohsman, have moved to dismiss the complaint against them on the ground that the Court lacks jurisdiction over their person for the reason that the complaint fails to allege where the tortious acts of defendants occurred; no acts of defendants within the State of Colorado are alleged in the second and third claims to have taken place. As to the fifth claim it is said that there is no allegation indicating when the alleged defamation occurred, if it occurred in Colorado.

The complaint herein was filed on January 21, 1966, and on the twenty-seventh of January, 1966, the plaintiffs filed a motion in which they alleged that the defendants reside in the State of Montana but are subject to service of process in Montana pursuant to the terms of the Colorado long-arm statute. A demand was made that the Court issue a summons and authorize the United States Marshal in Montana to serve process in Montana. Upon the basis of this motion, summons was issued and service was made in Montana.

Inasmuch as the allegations of the complaint were vague as to the acts, if any, committed by the individuals in Colorado, counsel for plaintiffs was requested to make a showing as to the Court's exercising personal jurisdiction under the Colorado long-arm statute. Such showing was made in the form of "Specification Re Extraterritorial Service of Process." In this document it is said:

"2. * * * (a) *Second Claim—(John R. Marchi and B. J. Marchi v. the three individual defendants).* The gist of this claim is that the individual defendants maliciously interfered with a contract between Ivanhoe and the above-named claimants and induced Ivanhoe to breach that contract.

"(b) *Third Claim—(Gypsy v. the three individual defendants).* The gist of this claim is that the defendants acting in concert with each other wrongfully frustrated and disrupted the advantageous joint corporate operations undertaken between Gypsy and Ivanhoe.

"(c) *Fifth Claim—(J. R. Marchi v. the individual defendants).* The gravamen of this claim is that J. R. Marchi was separately damaged (as distinguished from damages that may have been sustained by other plaintiffs) by the conspiracy of the individual defendants to bring about a breach of the aforesaid contract, to frustrate the joint operations of Gypsy and Ivanhoe and arrangements undertaken by J. R. Marchi in reliance thereon, and that the individual defendants overtly pursued said conspiracy by publishing false and malicious statements which further damaged J. R. Marchi in his business reputation. This claim also seeks the imposition of punitive damages."

The contract which the plaintiffs complain was maliciously breached, or violated, was an agreement between the Gypsy Pipeline Company and Ivanhoe Petroleum Corporation calling for the sale of shares of stock of Gypsy to Ivanhoe. Seemingly, this contract was repudiated by Ivanhoe and decisions were made at corporate meetings outside Colorado to pursue this course of action. The contentions in the second, third and fifth claims are that the individual defendants were responsible for this action. In essence, the facts which the plaintiffs rely on to establish the jurisdictional basis over the individual defendants are that the two corporations had their principal offices in Denver between the Fall of 1963 and December of 1964. On the latter date the defendant corporation moved to Billings, Montana, but during the period in question had been authorized to do business in Colorado. It is further alleged that the contract which the defendants conspired to "cause a breach of" was a Colorado contract. Fur-

ther, it is said that the advantageous relationships which the defendants are alleged to have conspired to interfere with had their situs in Denver, Colorado, in that the joint corporate operation which would result from the sale of the shares would have been in Denver. A further point advanced is that during the 1963–64 period when Ivanhoe was doing business in Colorado, one of the defendants, Boyd J. McGee, resided in Colorado. It is finally stated that the other two defendants pursued their activities as shareholders, directors, or officers of the defendant Ivanhoe while that corporation had its principal business in Colorado.

In summary, it would appear that the basis for invoking the long-arm statute is that there was a conspiracy to bring about the repudiation of the contract and even though the conduct occurred outside of Colorado, the result effectively did occur in Colorado inasmuch as the contract was a local one and the injury was suffered in Colorado since the plaintiffs were citizens of this state. So it boils down to whether the long-arm statute of Colorado can be invoked where it is alleged that acts of malicious interference took place outside of Colorado and took effect within the State.

The statute in question, '63 C.R.S., 37–1–26, 37–1–27, permits service of process on persons outside the jurisdiction of the state, concerning any cause of action arising from "the commission of a tortious act within this state; * * *."

The constitutionality of this statute is not now before us but we do note in passing that in order for service under it to be valid there must have been a minimum contact with the forum state. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. Various cases have been cited on both sides of this. It would appear that plaintiffs' reliance is placed on Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). Inasmuch as the Illinois statute is the same as that of Colorado, it is argued that this *Gray* decision should control. There an effort was made to

obtain jurisdiction under the long-arm statute over Titan Valve Manufacturing Company, an Ohio corporation, defendant. Titan had sold valves to a Pennsylvania manufacturer of hot water heaters. Subsequently, one of these heaters was used by an Illinois resident and one of the defendant company's safety valves failed to work causing the heater to explode, resulting in the injury to the plaintiff. Admittedly, Titan's contacts with the State of Illinois were limited to instances in which appliances ended up within the State of Illinois. It was held, nevertheless, that this was sufficient to justify the issuance of summons and great stress was placed on the fact that the injury took effect within the State of Illinois. It is here reasoned that if a manufacturer is to be held liable for the consequence of its negligent acts outside the state producing an injury within the state, that similarly jurisdiction should be assumed with respect to one who conspires to bring about the breach of contract outside the state upon the allegation that the consequences took place within the state. No case has recognized the applicability of the long-arm statute in a situation like the present one, that is, where what might be described as an intangible injury takes place within the forum state; indeed, the United States Court for the Northern District of Illinois refused, in the face of *Gray,* supra, to issue summons outside of the District of Illinois based upon alleged conspiracy similar to the present one wherein it was obscure as to whether the conspiracy occurred outside or inside Illinois. See Magnaflux Corporation v. Foerster, N.D.Ill.1963, 223 F.Supp. 552. The courts of New York have refused to follow the liberal view of the *Gray* case. See, for example, Feathers v. McLucas, 41 Misc.2d 498, 245 N.Y.S.2d 282.

One further difficulty with the case at bar is that there are few facts presented.

If some tangible supporting facts were before us we *might* be moved to issue summons notwithstanding that it is an intangible will-o'-the-wisp type of claim. However, there is a dearth of facts and an abundance of conclusions. From reading the numerous conclusions we are led to believe that an effort is being made to create a jurisdictional basis for the issuance of summons from a number of inconclusive minor matters, such as one-time residence within a state. Because of this we are constrained to hold that the showing in the complaint and in the subsequent affirmative factual memorandum filed are all vague and insufficient and this Court was without authority to issue the summons in the first place. It follows that the summons as to each of the defendants as applied to the second, third and fifth counts, and each of them, is hereby quashed.

Some semblance of a basis appears in the fifth claim in that there is a general allegation in the complaint that there were overt acts of publication of defamation pursuant to a general conspiracy to bring about a breach of contract. It is barely possible that such defamatory material, if actually presented, might throw a different light on this question. We are, however, entitled to see this material first. If any such exists, and plaintiffs know about it, they may file an amended Count 5 detailing any such publications which occurred within the State of Colorado. Plaintiffs are granted thirty days to file any amended Count 5 that they wish to file.

Inasmuch as the fourth claim is wholly dependent upon the second, third and fifth, there must also be dismissal of that claim. It is, therefore,

Ordered that the motion to dismiss addressed to the second, third, fourth and fifth claims be, and the same are hereby dismissed.