**Helen WALKER, Plaintiff,**

v.

**UNIVERSITY BOOKS, INC., a corpora-tion, et al., Defendants.**

**No. C–73–1920 RFP.**

United States District Court,
N. D. California.

July 15, 1974.

———————

Edward B. Gregg, Gregg, Hendricson & Caplan, Jayson Laumeister, San Francisco, Cal., for plaintiff.

Paul W. Vapnek, Henry Gifford Hardy, San Francisco, Cal., Robert J. Marcus, New York City, for defendants.

## MEMORANDUM AND ORDER

PECKHAM, District Judge.

Plaintiff Helen Walker filed an action on September 7, 1972 against defendants University Books, Inc. and Lyle Stuart, Inc. for copyright infringement. This action, numbered C–72–1599 RFP, was randomly assigned to this court. Plaintiff filed a new action on October 26, 1973 against defendants University Books, Inc., Lyle Stuart, Inc., The Olympia Press, Inc., Mystic Arts Books Society, Felix Morrow, Saul Weinreich, and Robert A. Solomon for copyright infringement, unfair competition, and fraud. This action, originally numbered C–73—1920 LHB, was reassigned to this court pursuant to Local Rule 101 (the related case rule) and Assignment Plan (h)(3).

Defendants University Books, Inc. and Lyle Stuart, Inc. filed a motion to dismiss in the original action, C–72–1599 RFP, on the ground that this court lacks personal jurisdiction. This motion was denied by this court in a Memorandum filed December 15, 1972. Defendant Felix Morrow has filed a motion to dismiss in the subsequent action, C–73–1920 RFP, on the ground that this court lacks personal jurisdiction. For the reasons stated infra, this motion also must be denied.

## FACTS

Plaintiff, a resident of California, authored and copyrighted a book entitled *I Ching Cards*. Plaintiff journeyed to New York during the latter part of 1971 to make arrangements for the reprinting and republishing of her book.

Plaintiff alleges that, while in New York, she talked with defendants Weinreich and Morrow concerning possible improvements for her book. She claims that defendants Weinreich, Morrow, and Solomon, who were associated with publishing houses, fraudulently procured confidential information by representing that they were interested in forming a joint venture with plaintiff to reproduce, with the specified improvements, the copyrighted *I Ching Cards*. The joint venture was never formed.

Plaintiff further alleges that the individual defendants and the corporate defendants published a literary property titled *I Ching Cards* which infringed her copyright on her own I Ching book. She claims that defendants' book incorporates the improvements she suggested in confidence to defendants during the New York conferences and that defendants have marketed their work in accordance with the suggestions she made during the conferences. Defendants, in fact, did make some sales in California of their book.

Defendant Felix Morrow, of course, paints a different picture of the New York encounter. He states in affidavit that plaintiff, an old friend whom he had not seen for fifteen years, visited his New York office in order to gain his help for the promotion of her I Ching Cards. He admits that they discussed the possibility of a joint venture, but says that this possibility disappeared when plaintiff refused to agree that the new partnership would have full rights in the I Ching Cards venture. He states that he had no further contact with plaintiff until he was served with a copy of her complaint.

Defendant Morrow states that he owned and managed University Books, Inc. prior to 1966, then worked as a consultant for the corporation until 1969, and now has no active role in its affairs. He says that he has had no active role in Lyle Stuart, Inc. affairs, including its decision to publish and market an I Ching book, but that he does own stock in the corporation.

Defendant Morrow claims no connection with California. He states that he has not worked in, lived, or owned property in California and has visited the state only on one occasion for several days, in 1973, long after the events alleged in the complaint occurred.

## DISCUSSION

Defendant Morrow, as noted *supra*, contends that this court must dismiss the action against him since it lacks personal jurisdiction over him.

■■ California Code of Civil Procedure § 410.10 provides for personal jurisdiction "on any basis not inconsistent with the Constitution of the state or of the United States." This statute indicates "an intent to exercise the broadest possible jurisdiction" consistent with the due process clause of the federal Constitution. Michigan National Bank v. Superior Court, 23 Cal.App.3d 1, 6, 99 Cal. Rptr. 823 (1972). This court must determine its extra-territorial personal jurisdiction under Rule 4(e) of the Federal Rules of Civil Procedure by applying the California long-arm statute within its constitutional limits. "The constitutional perimeters of this jurisdiction are found in the decisions of the United States Supreme Court." Michigan Bank v. Superior Court, *supra* at 6, 99 Cal. Rptr. at 826.

International Shoe Co. v. State of Washington, 326 U.S. 310, 316–317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), provides the basic definition for determining the appropriateness of personal jurisdiction over a foreign corporation:

. . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." (citations omitted)

The Supreme Court sustained the power of a Washington court to adjudicate the claims of the State of Washington for contributions to the state unemployment compensation fund from a corporation whose salesmen were active in the state. The Court noted that a corporation which conducts activities within a state,

. . . enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. *Id.* at 319, 66 S.Ct. at 160.

The International Shoe doctrine has been applied to individuals and partnerships as well as to corporations. See Second Restatement of Conflicts § 845.

McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), reinforced the International Shoe doctrine, extending its application to a case in which the defendant insurance company merely communicated by mail with its California customer. A unanimous Supreme Court held that,

It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State.

The Court emphasized that the State of California had a legitimate interest in protecting its residents' access to a local forum for suits against non-resident insurance companies.

Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), represents the Supreme Court's limitation of the liberal approach articulated by

both *International Shoe* and *McGee* to the definition of personal jurisdiction. Five members of the Court, in denying a Florida court's assertion of jurisdiction over a Delaware trust account, stated that,

> . . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *Id.* at 253, 78 S.Ct. at 1240.

Apparently, the Court majority reasoned that the "minimum contacts" with the forum state, mentioned in *International Shoe*, must equal a "purposeful availment" of the privilege of conducting activities in the forum state for the requirements of "fair play and substantial justice" to be satisfied. See also Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); Travelers Health Ass'n v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950).

█ The Supreme Court has remained silent on the issue of personal jurisdiction since its *Hanson* pronouncement. But see Opinion of Mr. Justice Goldberg, in chambers, denying a stay pending appeal in Rosenblatt v. American Cyanamid Co., 86 S.Ct. 1, 15 L.Ed.2d 39 (1965, Mr. Justice Goldberg, Circuit Justice), appeal dismissed 382 U.S. 1002, 86 S.Ct. 533, 15 L.Ed.2d 491 (1965). This silence has forced lower courts to harmonize the rules of *International Shoe, McGee,* and *Hanson*: generally courts assert personal jurisdiction if plaintiffs establish at least one of two alternative sets of jurisdictional facts.

As one alternative, plaintiffs may prove that defendants engage in such extensive activity within the state as to justify a finding of personal jurisdiction over a cause of action even though the state activity does not relate to the cause of action. *Cf.* L. D. Reeder Contractors of Arizona v. Higgins Industries, 265 F.2d 768, 774–776 (9th Cir. 1959). Plaintiff, in the instant case, cannot make this showing. Plaintiff does not challenge defendant Morrow's assertion that he has not engaged in significant activity in California of any kind. Plaintiff, in short, does not attempt to, and would not be able to, invoke this jurisdictional alternative.

As a second alternative, plaintiffs may prove that the particular cause of action arises out of or is connected with defendants' activity within the forum state. See, *e.g.*, Buckeye Boiler Co. v. Superior Court of Los Angeles County, 71 Cal.2d 893, 80 Cal.Rptr. 113, 458 P.2d 57 (1969); James R. Twiss, Ltd. v. Superior Court, 215 Cal.App.2d 247, 30 Cal.Rptr. 98 (1963). Plaintiff, in the instant case, invokes this alternative, claiming that defendant committed an act out of state causing an effect in the state giving rise to the cause of action pleaded in her complaint. Plaintiff, more specifically, alleges that defendant fraudulently secured confidential information from her concerning her I Ching efforts, conveyed the information to the corporate defendants, and thereby participated in the corporations' publishing and marketing in California a book which infringed her copyright and unfairly traded on her confidential statements. She, in effect, alleges that defendant Morrow reasonably could have expected his New York actions to trigger corporation activities with substantial effects in California.

Plaintiff's view of defendant's actions may not appear, at first glance, to prove that defendant had "minimum contacts" with California, as required by *International Shoe*, which equaled a "purposeful availment" of the privilege of conducting activities in the forum state, as required by *Hanson*. Defendant's actions may not appear to be related causally to the California injury. See Marra v. Shea, 321 F.Supp. 1140 (N.D.Cal.1971). However, a survey of court decisions which discuss personal jurisdiction in cases involving allegations of tortious activity strongly suggests that plaintiff has met her burden of proof in the instant case.

■ Courts, for example, frequently find a constitutional basis for personal jurisdiction if a defendant commits a tortious act outside the forum state which causes a personal injury to a resident of the state, even though the defendant did not engage in any other activity within the forum. In Duple Motor Bodies, Ltd. v. Hollingsworth, 417 F.2d 231 (9th Cir. 1969), Judges Merrill and Hamley upheld a Hawaii district court's finding of personal jurisdiction in a case in which an English bus manufacturer was sued by a Hawaii accident victim. The defendant manufactured bus coach bodies in England, shipped them to another English concern, and knew that the concern then sold the buses to a Hawaii tour company. The court noted that defendant did not directly engage in any activity in Hawaii but stressed that the English corporation manufactured the bodies "with the knowledge that they were to be used in Hawaii." *Id.* at 234. It concluded.

> We do not regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade. If it is clearly foreseeable as a result of trade with a foreign state that injury from a defective product (if it occurs) would occur in that state, the hardship of defending the product in that state in our judgment must be assumed as an attribute of foreign trade.

*Id.* at 235. In a more recent decision, Dawkins v. White Products Corp. of Middleville, Michigan, 443 F.2d 589 (5th Cir. 1971), Judges Tuttle, Brown, and Clark reached a similar result. They concluded that a Michigan corporation, which transacted no direct business in the Mississippi forum, was amenable to personal jurisdiction in the Mississippi court for claims based on personal injuries caused by the explosion of the Michigan corporation's allegedly defective products. These two decisions are representative of recent decisions which consider personal jurisdiction issues in tort cases. See, *e.g.*, Kroger Company v. Dornbos, 408 F.2d 813 (6th Cir. 1969); Metal-Matic, Inc. v. Eighth Judicial District Court, 82 Nev. 263, 415 P.2d 617 (1966); Gray v. American Radiator and Standard Sanitary Corporation, 22 Ill.2d 432, 176 N.E.2d 761 (1961).

■ These decisions reason that corporations (or individuals) who reasonably can foresee that their actions may have substantial effects in foreign states are subject to the foreign state courts' personal jurisdiction. This logic would appear to apply not only to cases which involve personal injuries but also to cases which concern other types of tortious activity. *Cf.* Elkhart Engineering Corporation v. Dornier Werke, 343 F.2d 861, 868 (5th Cir. 1965).

Courts, in fact, have exercised personal jurisdiction over defendants whose foreign state activity allegedly resulted in torts other than personal injuries within the forum state. See, *e.g.*, In-Flight Devices Corporation v. Van Dusen Air, Inc., 466 F.2d 220 (6th Cir. 1972) (alleged breach of contract resulting in injury to a foreign state corporation's business reputation); Maricopa County v. American Petrofina, Inc., 322 F.Supp. 467 (N.D.Cal.1971) (alleged California conspiracy to fix prices of liquid asphalt in Arizona); Path Instruments Internat'l Corp. v. Asahi Optical Co., 312 F.Supp. 805 (S.D.N.Y.1970) (alleged conspiracy outside New York to, inter alia, damage a New York corporation's business through unfair competition). These cases involve defendants with few, if any, connections with the forum state. The courts predicated jurisdiction on foreign state activity allegedly resulting in forum state harm.

■ Plaintiff, in the instant case, makes jurisdictional allegations which justify this court's invoking jurisdiction. She, as noted *supra*, alleges that defendant committed New York acts knowing that the acts would have California consequences; she alleges that defendant reasonably could have foreseen that his acts might result in copyright infringe-

ment and unfair competition in a distant state. Defendant, of course, denies that he participated in a New York conspiracy or knew that the corporate defendants would sell I Ching materials in California.

This court notes that plaintiff cannot conclusively "prove" the facts relevant to personal jurisdiction without necessarily "proving" her right to relief on the merits: the allegations concerning defendant's contacts with California will be at issue at the time of trial. This circumstance occurs whenever a plaintiff attempts to gain personal jurisdiction solely on the set of facts which also make out the claim. However, the court believes that plaintiff's fairly specific allegations suffice as proof for the purpose of resolving the initial personal jurisdiction problem, even though later court proceedings on the merits may prove all or part of the allegations erroneous. *Cf.* McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 181–182, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

Accordingly, defendant's motion must be denied.

So ordered.