**PROFESSIONAL INVESTORS LIFE INSURANCE COMPANY, INC., an Oklahoma Corporation, Plaintiff,**

v.

**Louis J. ROUSSEL et al., Defendants.**

**No. 76–178–C5.**

United States District Court, D. Kansas.

Jan. 11, 1978.

John C. Frieden, Topeka, Kan., for plaintiff.

Robert A. Schartz, Wichita, Kan., for Perkins.

Walter C. Williamson, Wichita, Kan., for Mick, Stack Assoc., Mick Adrian.

Bob W. Storey, Topeka, Kan., for Brandon, Pope and De La Barre.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

The above-captioned case came before the Court August 12, 1977, for hearing on plaintiff's motion to amend and defendants' motion to dismiss for failure to state a cause of action, lack of personal jurisdiction, and *forum non conveniens*. At that hearing both motions were ruled upon with the exception of that facet of defendants' motion to dismiss which dealt with the asserted lack of personal jurisdiction. Counsel for both parties were directed to submit supplementary briefs on the question of personal jurisdiction and the matter was taken under advisement. All briefs have been submitted; the Court has considered the arguments therein, and the matter is ripe for resolution.

This is a diversity action by plaintiff Professional Investors Life Insurance Co., Inc. (hereinafter "Professional Investors"), an Oklahoma Corporation, seeking to recover damages against various defendants for their asserted role in an allegedly fraudulent takeover of a Kansas Insurance Holding Company, Farm and Ranch Financial, Inc. ("Farm & Ranch"). Plaintiff wished to gain control of Farm & Ranch but alleges it was prevented from doing so by the conspiratorial acts of the defendants.

In its attempted takeover of Farm & Ranch, plaintiff executed a contract with First Greystone & Associates, a Missouri limited partnership not a party to this action. Plaintiff alleges, *inter alia*, that the tortious acts of defendants in carrying out an improper and illegal take-over induced First Greystone to breach this contract, because the surreptitious and illegal purchase of Farm & Ranch shares from other sources by defendants resulted in a threat to First Greystone that the value of the shares it held (and had contracted to sell to plaintiff) would plummet as a result of majority take-over of Farm & Ranch by defendants. As a result, First Greystone breached its contract with plaintiff and sold its holdings to defendants. Thus plaintiff pleads a cause of action based on tortious interference with contract rights. Plaintiff also

asserts that the illegal take-over of Farm & Ranch by defendants constituted an interference with prospective contracts or possible business advantage, recognized as an actionable tort by many states. See, 86 C.J.S. Torts § 43. Plaintiff also alleges fraud generally. A formerly-asserted cause of action based on violations of federal securities acts has been obviated by the recent decision in *Piper, et al. v. Chris-Craft Industries, et al.*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977).

The principal defendant in this action is Louis J. Roussel, a Louisiana resident, and a financier and investor well-versed in the law of corporate take-overs. *See, Roussel v. Tidelands Capital Corp.*, 438 F.Supp. 684 (S.D.Ala., 1977); *S.E.C. v. Roussel*, No. 76–2571 (E.D.La. 8/23/76); *West v. Certified Credit Corp.*, 162 So.2d 589 (La.App.1964). It is alleged Roussel orchestrated the conspiracy which led to "his" takeover of Farm & Ranch and the subsequent damage to plaintiff. Kansas law mandates filing and registration by those who would attempt to take over an insurance holding company. K.S.A. 40–3301 *et seq.* Both plaintiff and defendant Roussel, on behalf of National American Life Insurance Company (a Louisiana corporation controlled by Roussel and authorized to do business in Kansas) so registered. However, plaintiff alleges that prior to the time action was taken on either application by the Kansas Commissioner of Insurance, certain defendants at the direction of Roussel commenced acquisition of Farm & Ranch shares. Since under Kansas law registration and approval is prerequisite to any acquisition of ten percent or more of the stock of a Kansas insurance company, shares were allegedly acquired in the names of various defendant-investors whose portfolios were managed by Roussel. These include defendants Leu, Cauble, Azar, Salloum, and Empire Land Corporation, a Roussel-controlled Louisiana corporation.

It is alleged that in early February, 1975, prior even to the filing of National American's take-over application with the Kansas Insurance Commissioner, Roussel sent de-

fendant Shada (a director of National American) to Kansas for the purpose of acquiring control of Farm and Ranch, and Shada began acquiring shares from individual shareholders. Defendant Shada employed defendant Mick Stack and Associates, a Kansas brokerage firm, to make these acquisitions. Defendants Mick, Adrian, Smith, and Perkins are directors or officers of Mick Stack and Associates; they are separately represented and have not joined in the present motion. Plaintiff has voluntarily dismissed defendant Perkins from the action. Defendant Brandon is a Kansas resident and corporate officer of Farm & Ranch, who allegedly cooperated with Roussel and the other defendants in their illegal take-over attempts.

On the same date Roussel through National American filed with the Kansas Commissioner of Insurance, such registration was also filed with the Securities Exchange Commission ("Schedule 13(d)"). Certain irregularities in this filing led to the entry of a consent decree in an action brought by the Securities Exchange Commission against Roussel, American Benefit, Empire Land Corporation, and Republic Petroleum Corporation, another Roussel-controlled corporation. We note here that plaintiff alleges that many of the corporate defendants in this action, National American among them, are themselves controlled by defendant Superfine Oil Company, a "family business" owned by defendant Roussel, defendant Louis J. Roussel, III, his son, and a third party not named as a defendant herein.

Defendant De LaBarre is Roussel's personal attorney and an officer or director of various Roussel-controlled entities. As a result of De La Barre's involvement in the filings with the S.E.C. relative to the Farm & Ranch take-over, he was suspended from practice before the S.E.C. *In the Matter of De LaBarre*, File No. 3–5064 (Securities and Exchange Commission Administrative Proceeding, 8/19/76). Plaintiff further alleges that De LaBarre was a central figure in the conspiracy who made many of the "contacts" with the other defendants, and may have entered Kansas for the purpose of

furthering the plan. Defendant Pope is also suspected of entering Kansas; yet although De LaBarre and Pope are alleged to have made direct contact with an official of First Greystone for the purpose of inducing breach of the stock sales contract, these acts are assigned no situs in the amended complaint.

As can be seen, the alleged conspiracy has a very large cast of asserted participants. The alleged acts in furtherance of the conspiracy as outlined in the amended complaint and expanded upon in plaintiff's supplemental brief are not set forth here because of their complexity. Suffice it to say plaintiff has pleaded sufficient facts to indicate the existence of a grand plan to circumvent state and federal securities laws and gain control of Farm & Ranch. The problem before the Court is whether the acts alleged will support assumption of jurisdiction over each defendant under the Kansas long-arm statute, K.S.A. 60–308. The Court noted at the hearing that the nature and quality of each defendant's contacts with Kansas differed somewhat, and on the basis of the acts alleged in the amended complaint tentatively divided defendant into various "classes" according to the nature and locus of the acts alleged. Insofar as is practicable, we will discuss the applicable law as it relates to each such group.

We preface our discussion by noting that, where jurisdiction is controverted, the burden is on plaintiff to show that it exists. 5 Wright & Miller, Federal Practice & Procedure § 1350 and cases cited therein. In the absence of pleadings or affidavits controverting plaintiff's claims, jurisdiction is to be determined from the face of the complaint, with the allegations therein taken as true. *Yonofsky v. Wernick*, 362 F.Supp. 1005 (S.D.N.Y.1973). Moving defendants deny that any conspiracy was formed or carried out, and suggest that plaintiff has failed to carry its burden of proof in that regard. This "burden," however, is minimal at this stage of the litigation. Plaintiff need only make out a prima

facie case of the jurisdictional fact of conspiracy or entry into the state should the long-arm decision hinge on these matters; bald denials of the pleaded facts will not sustain a jurisdictional challenge, particularly when the facts alleged are detailed rather than themselves conclusory in nature. *Hanson v. Murphy*, 208 Kan. 297, 302, 491 P.2d 551 (1971). Plaintiff's threshold showing in this regard is impressive considering the dearth of discovery undertaken in the case, and is buttressed by the exhibits showing the interest of the S.E.C. and Kansas Insurance Commissioner in the acts of the principal defendants.

The causes of action alleged by plaintiff are "business torts," and as such are both tortious and contractual in nature. The Kansas long-arm statute provides for assumption of personal jurisdiction over persons alleged to have committed any of the following acts, *inter alia* :

(b) *Submitting to jurisdiction—process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(1) The transaction of any business within this state;

(2) The commission of a tortious act within this state;

\* \* \* \* \* \*

(5) Entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state;

\* \* \* \* \* \*

(7) Causes injury to persons or property within this state arising out of an act or omission outside of this state by the defendant, provided in addition, that at the time of the injury either (i) the defendant was engaged in solicitation or service activities within this state; or (ii) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of trade or use . . .

■ As to defendants Roussel, Shada, and National American, we believe we need look no further than the "transacting business" provision of K.S.A. 60–308(b)(1), *supra.* National American's act of filing its take-over proposal with the Kansas Commissioner of Insurance and mailing of solicitations to shareholders in Kansas, alleged in paragraphs 7 and 38 of the amended complaint, as well as its hiring of the Mick Stack brokerage firm, clearly constitute the transaction of business as contemplated by that section. Defendant Shada is alleged to have come to Kansas personally for the purpose of purchasing, or arranging the purchase of, Farm & Ranch stock. Amended complaint, paragraph 6. It is alleged he did so as the agent of defendant Roussel, which suffices to impose personal jurisdiction under the "agent or instrumentality" clause of K.S.A. 60–308(b), *supra.*

■ We believe, then, that defendants Roussel, Shada, and National American have been properly served in this action and are subject to the jurisdiction of Kansas courts. Defendants cite in opposition to the assumption of jurisdiction on "transacting business" grounds *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 528 P.2d 1248 (1974), and *White v. Goldthwaite*, 204 Kan. 83, 460 P.2d 578 (1969). In both cases the only contact of defendant relied upon to give jurisdiction was a telephone contact with plaintiff in Kansas; plaintiffs' unilateral actions formed the basis of the asserted jurisdiction, and jurisdiction was denied largely upon the authority of the "purposefully availing" test of *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In the case before us plaintiff took no action to "lure" defendants to Kansas; indeed it is not asserted, *and not essential to the cause of action*, that plaintiff had

any "contact" with defendants at all. The alleged acts of Roussel, Shada, and National American were purposeful, reached into the state, and allegedly violated the laws of the state; we can see no valid objections on due process grounds to the assertion of jurisdiction over these defendants. Further, we do not believe defendant Shada may claim to be exempt from personal jurisdiction in that he was acting only in a representative capacity, *see Wilshire Oil Co. v. Riffe*, 409 F.2d 1277 (10th Cir. 1969), for it is alleged he transacted business in Kansas with full knowledge and appreciation he was thereby committing tortious and illegal acts. *See,* Casad, Long Arm and Convenient Forum, 20 Kan.L.Rev. 1 (1971).

The acts attributed to defendants De La-Barre, Leu, Cauble, Azar, Salloum, and Pope present a more complex problem in light of the wording of the Kansas long-arm statute. None of these defendants are asserted to have committed acts in Kansas involving physical presence or agency in the traditional sense. All, however, are alleged to have committed various acts which caused foreseeable harm in Kansas, and to have joined in a conspiracy knowing harmful acts would be done in Kansas pursuant thereto. This presents a long-arm problem unresolved in Kansas:

> Comparable in some respects to the problem of jurisdiction to adjudicate closely related claims is the problem of jurisdiction over co-defendants who may share liability for the cause of action arising out of the "enumerated act." Unless the defendants themselves did an "enumerated act" out of which the cause of action arose, or unless the one who did such an act was their "agent or instrumentality," the long arm statute does not, in terms, reach them. But if our interpretation of *Hanson v. Denckla* is correct, there would be no constitutional barrier to the exercise of jurisdiction if the defendant who did not act in the state was aware that he was voluntarily participating in an arrangement likely to produce consequences in the state. A defendant who has somehow become concurrently liable with one who did perform

the "enumerated act" surely has sufficient "minimum contact" to satisfy due process, even if the relationship is not technically one of agency, at least if the contact with the state was foreseeable. The language of the Kansas long arm statute is not so restricting here, as it is in the matter of the related claims. It does contemplate reaching a defendant who has employed an "instrumentality" to perform the "enumerated act" but the courts have not been eager to give that term an expansive interpretation. The consideration of avoiding an unnecessary trial is as relevant here as in the case of the closely related claim, but there are other considerations that perhaps explain the reluctance to extend long arm jurisdiction over defendants who did not personally perform the requisite act within the state.

> The reason appearing most commonly in the cases that deny jurisdiction over such a defendant is the famous passage from *Hanson v. Denckla*. A good illustration of this is the case of *Wilshire Oil Co. v. Riffe*, discussed below. The courts that take this approach insist that the defendant must have initiated some sort of physical event within the state before jurisdiction can be upheld. *This means that it may not be possible to obtain long arm jurisdiction of one who allegedly conspired with a defendant who acted to commit a business tort in the state unless the conspirator himself did some act in the state to advance the conspiracy.* This result has been reached, even when it appeared that there was no one state in which both defendants could be sued if long arm jurisdiction over the non-acting conspirator was denied. Duplicate trials thus become inevitable.

Casad, Long Arm and Convenient Forum, *supra*, at 18–19. It appears the problem facing us is primarily one of statutory interpretation. While the Kansas Supreme Court has repeatedly held that the legislative intent of K.S.A. 60–308 is to assert jurisdiction over nonresident defendant to the full extent permitted by the Constitu-

tion, *Whisenant v. Whisenant,* 219 Kan. 387, 548 P.2d 470 (1976); *Misco-United Supply, supra; White, supra,* when a legislature takes an "enumerationist approach" in formulating its long-arm statute circumstances may arise where the due process clause allows assumption of in personam jurisdiction and the statute apparently does not. Such a situation has been faced in Kansas in the case of *State ex rel. Carrington v. Schutts,* 217 Kan. 175, 535 P.2d 982. In that case a set of facts which would seem to allow assumption of jurisdiction within constitutional limits was held not within the "enumerated acts" of K.S.A. 60–308. See 1976 Supp., Vernon's Kansas Statutes Annotated § 60–308, 12–13. Following the decision in the *Schutts* case, the Kansas Legislature amended the statute to include the conduct at issue in the case. K.S.A. 60–308(b)(10). *But see, Whisenant v. Whisenant,* 219 Kan. 387, 548 P.2d 470 (1976).

We encounter this problem when examining whether the above-named defendants may be served with process in this suit under the provisions of K.S.A. 60–308(b) which provide for such service upon one who has committed certain types of tortious acts. Plaintiff in this action claims it sustained injury in Kansas, through its inability to gain control of a Kansas corporation. There is support for this contention in suits for unfair competition. *Spectacular Promotions, Inc. v. WING,* 272 F.Supp. 734 (E.D. N.Y.1967). Yet assuming for the nonce the tort "occurred" in Kansas, there remains a problem with the "commission of a tortious act within the state" provision of K.S.A. 60–308(b)(2). The Kansas legislature has provided for jurisdiction over a nonresident who commits an act outside the state which results in injury within, but this provision appears primarily designed for application in the "products liability" situation since additional requirements of commercial operation must be met in order to satisfy the section.

The landmark case supporting the proposition that commission of an act without the state which results in injury within should subject the actor to service, under a long-arm statute providing for service for the commission of a tortious act within the state, is *Gray v. American Radiator and Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961). It is contended that Illinois' construction of its "tort in state" provision should be persuasive in Kansas, since Kansas adopted the Illinois long-arm statute *in toto.*

*Gray,* a products liability case, essentially held that foreseeability of consequences in another state is constitutionally sufficient to hold the tort committed in the forum state for long-arm purposes. Yet the products liability situation encountered in *Gray* would in Kansas fall under the provisions of K.S.A. 60–308(b)(7) discussed *supra.* Further, two years after its decision in *Gray* (and one year prior to Kansas adoption of the Illinois statute), an Illinois federal district court held that the Illinois long-arm statute did not apply in a "business tort" situation, notwithstanding foreseeability, when an alleged co-conspirator was not alleged to have committed a physical act in Illinois. *Magnaflux Corp. v. Foerster,* 223 F.Supp. 552 (N.D.Ill.1963). Although this case is no longer persuasive precedent, see *Florendo v. Pan Hemisphere Transport, Inc.,* 419 F.Supp. 16 (N.D.Ill.1976), we are concerned by the Kansas Supreme Court's rejection of an Illinois construction of the "tort in state" provision made subsequent to Kansas' adoption of the statute:

> We did not adopt the Illinois long-arm statute with the strained construction more recently placed on the phrase "tortious act" by the Illinois appellate court.

*Schutts, supra,* 217 Kan. at 179, 535 P.2d at 986. Although the question involved in *Schutts* did not arise in a "business tort" context, we are wary of finding Illinois law too persuasive in construing the Kansas "tort in state" provision. The *Gray* "foreseeability" test is confined by implication to products liability cases in *Tilley v. Keller Truck & Implement Corp.,* 200 Kan. 641, 648–49, 438 P.2d 128 (1968).

As we have stated, however, we are unable to discover that the Kansas Supreme Court has addressed itself to a question

akin to that before us. We feel the question of foreseeability must therefore be examined in light of plaintiff's claim that all co-conspirators must be considered agents or instruments of the others, and thus the act of one co-conspirator is considered under the law to be the act of all those involved. This is undeniably true as a rule of liability:

A conspiracy in and of itself is not actionable, but Kansas has long recognized there may be recovery against all members of the civil conspiracy by one who has suffered damages as a result of actionable conduct done by one or more of the conspirators pursuant to the conspiracy.

*Intern. U., United Auto, et al. v. Cardwell Mfg. Co.*, 416 F.Supp. 1267, 1290 (D.Kan. 1976). However, the novel question presented in the case before us is whether well-pleaded allegations of conspiracy will also suffice as grounds for personal jurisdiction in Kansas. On this point we requested supplemental briefing. As we stated at the hearing, plaintiff's contentions present a close question of legislative intent and public policy. Should a plaintiff, by alleging a conspiracy, be able to subject nonresidents whose only clear act was the purchase of stock in a Kansas corporation, to service of process? On the other hand, can courts allow conspirators to insulate themselves from Kansas process by manipulating the degree of their involvement with the more direct acts of others?

The supplemental briefs, and our independent research, have unearthed several cases dealing with the problem before us. The State of New York has a long-arm statute analogous to that of Kansas in that it contains both "tort in state" and "products liability" clauses nearly identical to K.S.A. 60–308(b)(2) and (7). In *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307 (S.D.N.Y.1975), it was held that a nonresident defendant who allegedly conspired with a state resident to commit a "business tort" was subject to service of process under the New York "tort in state" provision, notwithstanding defendant's contention that it had never been in New York,

either by officer or agent, and conducted all business with state residents (co-conspirators) by mail or telephone. The court recognized that, "particularly in this day of instant long-range communications, one can engage in an extensive purposeful activity here without ever actually setting foot in the state." *Id.* at 313, *citing Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 17, 308 N.Y.S.2d 337, 340, 256 N.E.2d 506 (1970). The court in *Ghazoul* emphasized that plaintiff had pleaded "definite evidentiary facts" rather than bald conclusions of conspiracy, which if proven would establish both the existence of a conspiracy and plaintiff's right to damages therefor. *Compare Chemical Bank v. World Hockey Ass'n.*, 403 F.Supp. 1374 (S.D.N.Y.1975).

The long-arm statute of the District of Columbia is similarly akin to that of Kansas. Plaintiff has brought to our attention the case of *Mandelkorn v. Patrick*, 359 F.Supp. 692 (D.D.C.1973). While that case did not involve a "business tort," it does support the proposition that when one alleged conspirator commits acts within the forum state, and sufficient facts are pleaded to allow the court to infer the likelihood of conspiracy, assumption of long-arm jurisdiction is justified. To the same effect is the case of *Hunt v. Nevada State Bank*, 285 Minn. 77, 172 N.W.2d 292 (1969); again the Minnesota statute closely parallels that of Kansas.

Plaintiff has also cited the cases of *Hitt v. Nissan Motor Co., Ltd.*, 399 F.Supp. 838 (S.D.Fla.1975); *Walker v. University Books, Inc.*, 382 F.Supp. 126 (N.D.Cal.1974); and *Maricopa County v. American Petrofina, Inc.*, 322 F.Supp. 467 (N.D.Cal.1971). While these cases certainly support plaintiff's contentions, they are somewhat less helpful in that the statutes concerned diverge more significantly from that of Kansas. In *Hitt*, personal jurisdiction was upheld on a "foreseeability" basis under the long-arm statutes of several states. The wording of some of the statutes involved was similar to the wording of 60–308(b), but in many cases the states involved had expressly adopted a foreseeability standard. *Id.* at 850–54.

Also, an argument may be made that the solicitation activities present in *Hitt* would be governed by subsection (b)(7) of the Kansas statute had the case arisen in Kansas. The *Maricopa County* case was based upon the Arizona long-arm statute, which grants personal jurisdiction over a person who "has caused an event to occur in this state out of which the claim which is the subject of the complaint arose." Rule 4(e)(2), Ariz.Rev.Civ.P., 16 A.R.S. The same holds true for the *Walker* case; it involved the California long-arm statute providing for personal jurisdiction "on any basis not inconsistent" with the Constitution. West's Ann.Cal.Code Civ.Proc. § 410.-10. However, while such cases may be of less aid in construing the Kansas statute here in question, they do evidence a trend in "business conspiracy" cases to uphold long-arm jurisdiction if the harm suffered is "within the contemplation" of the nonresident defendant. *See O'Donnell Chevrolet, Inc. v. Shankles,* 276 F.Supp. 998 (N.D.Ill. 1967) ("foreseeability" test should apply to all intentional torts).

We have found two cases analogous to that before us in which courts have refused to assume jurisdiction over a nonresident asserted to have been a participant in a "business conspiracy." In *Gypsy Pipeline Co. v. Ivanhoe Petroleum Corp.,* 256 F.Supp. 567 (D.Colo.1966), plaintiffs pleaded a conspiracy to induce a breach of contract, under a "tort in state" jurisdictional provision virtually identical to that of Kansas. Assumption of jurisdiction was denied notwithstanding a "foreseeability" argument. The court, however, went to great lengths to point out the dearth of alleged facts which would allow it to give some credence to the claim of conspiracy. In *Baldridge v. McPike, Inc.,* 466 F.2d 65 (1972), the Tenth Circuit upheld a jurisdictional challenge to a complaint alleging a "business conspiracy" by nonresidents of the forum state, Oklahoma. Yet again the decision rested on the absence of sufficient indication that a conspiracy might have existed:

> Mere allegation of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of

personal jurisdiction of co-conspirators outside the territorial limits of the court

. . .

*Id.* at 68.

Thus we find that courts faced with allegations of a conspiracy to commit a "business tort" which has foreseeable consequences in the forum state uphold jurisdiction unless the allegations of conspiracy are too conclusory, too unsupported to be given credence. This is not the case in the present action. Plaintiff has submitted numerous documents and pleaded numerous facts tending to show the existence of a wide-ranging and carefully thought-out plan.

■ We believe plaintiff's submission of such evidence tilts the balance in favor of assumption of jurisdiction in this case. We quote again from Casad, Long Arm and Convenient Forum, page 7, *supra:*

> [E]ven if the *Hanson* physical impact notion is rejected, there may be some justification for the reluctance to extend long arm jurisdiction over these non-acting defendants. Apart from "foreseeability" as a legal requirement, there is the problem of establishing that the requisite contact exists where that contact itself is a complex mixture of facts and law. *The mere claim by a plaintiff that a defendant has the requisite contact for long arm jurisdiction does not, ipso facto, establish it. A hearing is necessary to determine the correctness of that contention if the defendant challenges it. In complicated cases, it may be unfair even to require the defendant to appear and contest jurisdiction if it seems unlikely that the plaintiff will be able to make the requisite showing.* Where the defendant's alleged contact is some form of physical conduct, the problem is not acute. Physical conduct is susceptible of solid proof, and the plaintiff will either have it or he will not. *Establishing a relationship between defendants on the other hand may have to rest on inference from circumstantial evidence. Even an agency relation may be very difficult to establish*

*without a document or some other direct evidence. Where jurisdiction depends on the existence of such a relationship, a hearing on a motion to dismiss may turn out to be a complex and burdensome proceeding.* Many of the cases refusing to uphold jurisdiction over defendants who did not personally perform the "enumerated act" may perhaps be rationalized as cases where the *plaintiff could not establish the jurisdictional contact without a full scale trial (which the defendant should not have to participate in unless jurisdiction were previously established). In those cases, there was little or no solid evidence to support the plaintiff's contention that the defendants were related together in a way that would justify jurisdiction over. the non-actor.* The problem is more a matter of proof than of constitutional limitation, and the courts should regard it as such. By basing these decisions on Constitutional grounds, courts from precedents that may require dismissal even when plaintiffs are able to prove that the defendant's connection with the cause of action warrants long arm jurisdiction. Hopefully the Kansas Court will adopt the "proof analysis," if an appropriate case is presented. However, the court's past reliance on the *Hanson* physical impact theory may deter it from doing so in the absence of new legislation.

*Id.* at 19–20. We believe the allegations of plaintiff in the present case are sufficient to invoke "threshold jurisdiction" as to defendants De LaBarre, Leu, Cauble, Azar, Salloum, and Pope. If after discovery has taken place any of these defendants wish to renew their motion to dismiss, we will at that time reexamine the showing which can be made by plaintiff, although we suspect the crucial matter at that point will be proof of *intent* by individual defendants, a fact question which may have to await trial.

We believe this conclusion is consistent with the Kansas Legislature's presumed intent to extend long-arm jurisdiction to constitutional limits, see p. 8, *supra*. Even the conspirators who are alleged to have done no more than purchase stock can be said to have "personally availed" themselves of the privilege of invoking Kansas laws, *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. 1228. As was said in *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933 (10th Cir. 1977):

> *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, requires that the contact be "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" No particular factor is decisive. Consideration should be given to the interest of the state in providing a forum, the relative convenience of the parties, and basic equities
> . . .

Kansas has a great interest in providing for redress for those injured by nonresidents engaged in any activity which the state treats as subject to special legislation. *Id.* at 694. The interest of Kansas in this case and the alleged conduct of defendants herein is evidenced by the pains taken by the Kansas Legislature to create subject matter jurisdiction in the courts of Kansas over all actions arising out of violations of the Kansas Insurance Holding Company Act. See K.S.A. 40–3304(h). Furthermore, the legislative amendment of K.S.A. 60–308 so soon after the decision in *Schutts,* p. 694, *supra,* suggests an intent to "cover all the bases" consistent with constitutional interpretation.

In upholding jurisdiction over the defendants above listed, we note further that plaintiff has alleged that many of the stock purchases in which they engaged were handled through Mick Stack Associates as agent in Kansas. This alone should suffice to give personal jurisdiction over such parties pursuant to the "agent or instrumentality" clause of K.S.A. 60–308(b) and subsections (1) and (5). Further, it is alleged that many of these defendants personally or through agents contacted Farm & Ranch shareholders, residents of this state, for the purpose of purchasing stock. Since the purchase of such stock prior to approval by the Kansas Insurance Commissioner was allegedly an object of the conspiracy, we be-

lieve jurisdiction over such defendants may also be upheld under K.S.A. 60–308(b)(5), set forth in full at page 692 *supra.*

 Two defendants remain to be discussed, Superfine Oil Co. and Louis J. Roussel III. It is alleged Superfine is a "family business" of the Roussels and controls various other corporations, among them defendant National American. Standing alone, we doubt such allegations are sufficient to trigger in personam jurisdiction over Superfine. The rationale of the courts which have extended jurisdiction over a foreign parent corporation on the basis of a subsidiary's "presence" within the state is that when the parent corporation exercises such control and domination over the subsidiary that it no longer has a will, mind, or existence of its own, and operates merely as a department of the parent corporation, both corporations should be treated as a single economic entity. In such a situation service of process on the subsidiary operates to extend jurisdiction over the parent. *Farha v. Signal Companies, Inc.,* 216 Kan. 471, 480, 532 P.2d 1330 (1975; opinion modified 217 Kan. 43, 535 P.2d 463 to eliminate K.S.A. 60–308 as basis for jurisdiction).

 In the present case, however, we believe the allegations of plaintiff are sufficient to uphold personal jurisdiction over Superfine. While the pleadings do not go so far as to allege that any of the other defendant corporations are merely "shams," or that Superfine is merely the "alter ego" of principal defendant Roussel, the complaint and other documents hint strongly that all corporate defendants operate at Roussel's direction. The "family" nature of Superfine further lends credence to this view. Finally, it is alleged that in the information supplied to all stockholders of Farm & Ranch pursuant to National American's filing with the Kansas Insurance Commissioner was a balance sheet supplied by Superfine. The National American take-over application listed Superfine as its controlling entity and the Roussel family as Superfine's owners. Plaintiff contends that the balance sheet supplied by Superfine is grossly erroneous, and was submitted by Superfine "with the full and complete knowledge that it would be utilized to inform Kansas shareholders of the financial ability of National American." Plaintiff's supplemental brief at 33. Thus the involvement of Superfine with the alleged conspiracy can be said to be more than purely derivative, and we believe Superfine is subject to the jurisdiction of Kansas courts for the reasons discussed in relation to the other defendants above.

 Defendant Roussel, III holds various offices in Superfine and another corporation involved with this suit, and also holds office in the bank that allegedly financed the transactions which led to the filing of this suit. No more specific allegations tie him to the conspiracy herein alleged. Jurisdiction over individual officers and employees of a corporation may not be predicated merely upon jurisdiction over the corporation itself. *Path Instruments v. Asahi Optical Co.,* 312 F.Supp. 805 (S.D.N.Y.1970); *Wilshire Oil Co. v. Riffe,* 409 F.2d 1277, 1281 n. 8 (10th Cir. 1969). We do not believe, on the present state of the record, that jurisdiction over defendant Roussel, III, may be upheld.

 Defendants strenuously argue that no harm was done plaintiff, or if so, that no harm was done plaintiff in Kansas. Defendants point to the compromise plaintiff entered into with First Greystone to dissolve the stock purchase contract. We have not been sufficiently informed of the circumstances surrounding this alleged release, and cannot today pass upon its effect. We note, however, that if this transaction occurred after the acts of defendants allegedly forced plaintiff and First Greystone into an untenable position, plaintiff's attempt to mitigate its damage would not alter the fact or character of the asserted wrongs. Although such a release may have an effect on the measure of damage in the event plaintiff emerges victorious, it would not affect our jurisdictional inquiry. More troubling is defendant's contention that the injury, if any, occurred in Oklahoma because plaintiff is an Oklahoma corporation. Yet as we noted in ruling upon defendant's

claims of *forum non conveniens* in this case, Kansas appears to be the only forum having sufficient contacts with all the parties to entertain the suit. We do not believe we need assign an artificial "situs" to the wrong alleged based on plaintiff's state of incorporation. Although plaintiff and most defendants are nonresidents, their interests clashed in Kansas, and the interests of many Kansas residents were affected thereby. The wrong plaintiff alleges is loss of its opportunity to control a Kansas corporation—and if that lost opportunity is to be assigned a "situs," it must certainly be Kansas. At the time of the acts alleged, plaintiff was "in Kansas" to the extent possible for a foreign corporation. We believe "the relationship of both the plaintiff and the defendant to the state are sufficient to make the exercise of jurisdiction reasonable." Restatement, Conflicts 2d, Reporter's Note to § 37. See also, *Spectacular Promotions, Inc. v. WING, supra* at p. 694.

We have not discussed the question of jurisdiction over defendant Clark Brandon. Although captioned as a moving defendant, Mr. Brandon was at all relevant times a Kansas resident and remains so to our knowledge.

Although the above discussion disposes of all jurisdictional questions before the court, we note that the discovery begun by plaintiff and non-movant defendants has already reached something of an impasse. We have before us plaintiff's motion for a protective order barring interrogatories which allegedly exceed in volume what is permitted by local rule. Discovering defendants deny that their interrogatories are excessive, and have filed a motion for leave to file additional interrogatories. We have suspended our consideration of these motions pending today's decision on the jurisdictional claims of the remaining defendants. Now that discovery may proceed as to all defendants, we believe some court oversight of the discovery stage of this case is in order. Although the issues raised by this case and the proof thereof is not likely to be so complicated that it will be beyond the understanding of any jury, see *In re U.S. Financial Securities Litigation*, 75 F.R.D.

702 (S.D.Cal., 1977), the case is sufficiently complex that we believe all involved, including the Court, would benefit from a preliminary conference on the further conduct of this action.

IT IS THEREFORE ORDERED that the motion to dismiss for lack of personal jurisdiction of all defendants save Louis J. Roussel, III, is overruled and denied;

THAT as to defendant Louis J. Roussel, III, the motion to dismiss will be sustained; and

THAT counsel for all parties will meet in conference with the Court at 1:30 P.M. Thursday, January 26, 1978, to discuss the further course of this action. The matter of the pending discovery motions will be taken up at that time, but counsel should endeavor to meet among themselves prior to the conference to see whether any problems may be settled by mutual consent.

IT IS SO ORDERED.